**Hilda SIEGEL, individually and on behalf of Barry Alan Siegel and Louis Carole Siegel, infants, and Paula Lee Siegel, Plaintiffs,**

v.

**BRANIFF AIRWAYS INCORPORATED, Lockheed Aircraft Corporation and General Motors Corporation, Defendants.**

United States District Court
S. D. New York.
March 29, 1960.

See also 202 F.Supp. 313.

Harry H. Lipsig, New York City, for plaintiffs. Speiser, Quinn & O'Brien, by Robert A. Dwyer, New York City, of counsel.

Mendes & Mount, New York City, for defendant Lockheed Aircraft Corp. Kenneth R. Thompson, George W. Clark, New York City, of counsel.

LEVET, District Judge.

█ The defendant Lockheed Aircraft Corporation (hereinafter designated as "Lockheed") has moved pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. for an order dismissing the second and fifth alleged causes of action in the complaint for failure to state claims upon which relief can be granted. The question involved is whether these claims, which are predicated upon breach of implied warrant of quality and fitness, must be dismissed upon the ground that there was lack of privity between plaintiff and the defendant.

This action seeks recovery for conscious pain and suffering and for the wrongful death of the decedent, Herman Siegel, sustained in a crash of a commercial airline plane near Buffalo, Texas on September 29, 1959. The decedent was a passenger in this plane, which was then owned and operated by defendant Braniff Airways Incorporated (hereinafter designated as "Braniff"). However, this aircraft had been designed, manufactured and sold to Braniff by defendant Lockheed.

█ Since the accident happened in Texas, the New York Conflict of Laws Rule requires that the substantive law of the State of Texas be applied. See Poplar v. Bourjois, Inc., 298 N.Y. 62, 80 N.E.2d 334 (1948); Hunter v. Derby Foods, Inc., 2 Cir., 1940, 110 F.2d 970, 133 A.L.R. 255; Goldberg v. American Airlines, Inc., Supreme Court, New York County, 1960, Steuer, J., 23 Misc.2d 215, 199 N.Y.S.2d 134.

The second and fifth causes of action in this complaint, insofar as defendant Lockheed is concerned, are predicated upon the breach of an implied warranty of quality and fitness. The defendant Lockheed asserts that such causes of action are invalid since no privity of contract between the plaintiff or her decedent and

the said defendant Lockheed existed and under the law of Texas privity of contract is necessary.

The question, therefore, to be determined is whether or not under the laws of the State of Texas privity of contract is necessary upon which to base these claims.

The Supreme Court of Texas in Jacob E. Decker & Sons, Inc. v. Capps et al., 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942) apparently for the first time decided that privity of contract was not prerequisite to liability in the case of a non-negligent manufacturer who processed and sold contaminated food to a retailer for resale for human consumption. The action was by a consumer for injuries sustained by him as a result of eating such food.

Chief Justice Alexander in the Decker case, supra, said:

"After having considered the matter most carefully, we have reached the conclusion that the manufacturer is liable for the injuries sustained by the consumers of the products in question. We think the manufacturer is liable in such a case under an implied warranty imposed by operation of law as a matter of public policy. We recognize that the authorities are by no means uniform, but we believe the better reasoning supports the rule which holds the manufacturer liable. Liability in such case is not based on negligence, nor on a breach of the usual implied contractual warranty, but on the broad principle of the public policy to protect human health and life. It is a well-known fact that articles of food are manufactured and placed in the channels of commerce, with the intention that they shall pass from hand to hand until they are finally used by some remote consumer. * * *

"Since very early times the common law has applied more stringent rules to sales of food than to sales of other merchandise. It has long been a well-established rule that in sales of food for domestic use there is an implied warranty that it is wholesome and fit for human consumption. Race v. Krum, 222 N.Y. 410, 118 N.E. 853, L.R.A.1918F, 1172; Wiedeman v. Keller, 171 Ill. 93, 49 N.E. 210; Houston Cotton Oil Co. v. Trammell, Tex.Civ.App., 72 S.W. 244; 55 C.J. 764; 24 R.C.L. 195; 37 Tex.Jur. 299. A majority of the American courts that have followed this holding have not based such warranty upon an implied term in the contract between buyer and seller, nor upon any reliance by the buyer on the representation of the seller, but have imposed it as a matter of public policy in order to discourage the sale of unwholesome food. * * *" (164 S.W.2d p. 829)

"While a right of action in such a case is said to spring from a 'warranty,' it should be noted that the warranty here referred to is not the more modern contractual warranty, but is an obligation imposed by law to protect public health. * * *" (p. 831)

After stating: "It must be conceded that many courts have denied recovery against the manufacturer and have insisted strictly on the requirement of privity" and citing the authorities, the Chief Justice wrote: "There is a growing tendency, however, to discard the requirement of privity and to hold the manufacturer liable directly to the ultimate consumer." (p. 832) He subsequently stated: "If the main purpose of the rule is to protect the health and life of the public, there is no merit in denying relief to a consumer against the manufacturer on the ground of lack of direct contractual relation." (p. 833)

In 1957, the United States Court of Appeals for the Fifth Circuit passed upon an action for negligence of a manufacturer in the design, manufacture and erection of an oil drilling derrick, brought by an employee of the purchaser and tried by a United States District Court in Texas. (International Derrick

& Equipment Co. v. Croix, 5 Cir., 241 F.2d 216) Jones, Circuit Judge, on page 221 wrote:

> "The rule which is now generally, though perhaps not universally, recognized has been set forth in the Restatement in this language:
>
> " 'A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured.' Restatement, Torts, § 395.
>
> Such is the law of Texas. The foregoing pronouncement is quoted and approved in Johnson v. Murray Co., Tex.Civ.App., 90 S.W.2d 920. See also Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W. 2d 99, reversing in part [Tex.Civ. App.,] 257 S.W.2d 140. * * *"

It is true that in 1955 the Court of Civil Appeals of Texas (an intermediate court) declined to extend the doctrine of the Decker case to find liability against a non-negligent manufacturer of insecticide concentrate on behalf of an owner of dairy cows which were killed or injured by a toxic element in the spray. Brown v. Howard, 285 S.W.2d 752.

Moreover, this court has not overlooked Page v. Cameron Iron Works, decided in the United States District Court, Southern District of Texas in 1957 (155 F.Supp. 283). Here the law involved was not Texas law but that of Louisiana, where the accident occurred. The determination of this case on appeal (5 Cir., 1958, 259 F.2d 420) on a Louisiana statute of limitations is without significance to the present question before this court.

It has been stated that modern legal writers have almost without exception observed the present trend toward finding strict liability on the part of the manufacturer for defects in his goods, and have approved of the development. Note, Sales—Liability of Manufacturer to Remote Vendee for Breach of Warranty—"Privity of Warranty", 29 Boston Univ.Law Review 107, 113 (1949).

This view is shared by Dean Prosser (Torts, 2nd Ed.), who states in effect (pp. 506–7) that all legal writers have approved the policy of extending liability against non-negligent manufacturers, irrespective of privity. Prosser mentions as factors in this tendency: (1) An increased feeling that social policy demands that the burden of accidental injuries caused by defective chattels be placed upon the producer, since he is best able to distribute the risk to the general public by means of prices and insurance; (2) The difficulty of proving negligence in many cases where it exists, even with the aid of res ipsa loquitur; (3) The wastefulness and uncertainty of a series of warranty actions carrying liability back through retailer, jobber and wholesaler to the original maker; (4) In the public interest the consumer is entitled to the maximum of protection at the hands of some one, and the producer, practically and morally, is the one who can afford it.

Prosser states that by 1955 nearly a third of the American jurisdictions had broken away to some limited extent from the requirement of "privity of contract." (p. 507)

Although this extension of liability has thus far perhaps taken place almost entirely in cases involving defective food (Prosser, p. 507), no valid reason appears for distinguishing between food cases and others so far as the privity requirement is concerned. (Harper & Jones, The Law of Torts (1956) p. 1573)

As stated by Fleming, James, Jr. (Professor of Law, Yale University Law School) in writing of the privity limitation: "Perhaps such a limitation corre-

sponds to the reasonable expectations of commercial buyers and sellers when they are concerned with trade losses. But where commodities are dangerous to life and health, society's interest transcends that of protecting reasonable business expectations. It extends to minimizing the dangers to consumers and putting the burden of their losses on those who best can minimize the danger and distribute equitably the losses that do occur. * * * No valid reason appears for distinguishing between food cases and others so far as the privity requirement is concerned. Fleming, Products Liability, 34 Texas Law Review, 192, 193, 196 (1955).

The trend generally is to abrogate the requirement of privity of contract. For example, see Spence v. Three Rivers Builders & Masonry Supply, Inc., 1958, Supreme Court of Michigan, 353 Mich. 120, 90 N.W.2d 873 (opinion by Mr. Justice Voelker). See summary in Parish v. Atlantic & Pacific Tea Co., 1958, 13 Misc.2d 33, 177 N.Y.S.2d 7; Hinton v. Republic Aviation Corporation, D.C.S.D. N.Y., 1959, 180 F.Supp. 31 (law of California); Conlon v. Republic Aviation Corporation, 1960, D.C.S.D.N.Y. 204 F. Supp. 865 (law of Michigan); Middlleton v. United Aircraft Corp., 1960, D.C. S.D.N.Y., 204 F.Supp. 856 (Death on the High Seas Act, Title 46 U.S.C.A. § 761 et seq.).

It must be noted that the question here involved is not the *nature* of liability; that is the province of the trial court. The sole question is whether the plaintiffs are precluded from attempting to assert a claim against the manufacturer because of the absence of a direct contractual relationship or privity with such a defendant. As heretofore indicated, the gravamen of the claim asserted by the plaintiffs and attacked by the defendant is basically tort—the violation of a duty to persons such as the plaintiffs. This motion tests solely the right of the plaintiffs to invoke such a claim.

Obviously the trial court has the duty of determining the questions of proximate cause, the nature of the liability, the relationship of manufacturer and operator, the effect of maintenance and any other relevant factual issues.

It may be argued that the determination that privity is not required is a drastic innovation. The progressive decline of the older rule, based as it was on an infirm and fallacious foundation, is clearly evident. The fact that a manufacturer of an aircraft whose plant is located in Connecticut, for instance, may become involved because of a disaster happening in Michigan or in Texas, may have unfortunate aspects, but that is not determinative of the question at issue. This happens in respect to other obligations. The fact that modern life and developments, such as transportation, have taken on complex relationships is no anomaly. Complex relationships demand complex responsibilities. If life is complex, so are the laws of human relationships, which are the results thereof.

The arguments against the requisite of privity may be summarized as follows:

1. The decisional approach which requires privity in breach of implied warranty actions is based upon fallacious reasoning.

2. While some courts have followed the earlier cases requiring privity, the fallacy of this approach has become apparent in many jurisdictions and the privity doctrine has been discarded in numerous cases involving food.

3. The requirement of privity in negligence causes of action has been discarded, particularly in cases where the product involved is "a thing of danger."

4. The same considerations which have prompted the demise of the privity requisite in negligence actions and in implied warranty actions involving food are present in this breach of warranty action involving an aircraft. The nature of this product is one which may well place life and limb in danger if that product is defective.

5. There has been no logical or realistic reason advanced why privity should be retained in a breach of implied warranty case. The Decker case, supra, and

the other cases cited herein indicate that the definite and persuasive trend is toward the abrogation of this anachronism.

In view of the evident trend in the State of Texas and elsewhere, I am inclined to conclude that the Supreme Court of Texas would not apply the requirement of privity to the causes of action or claims which are attacked by this motion.

The defendant's motion is denied.

So ordered.