The Libels of Bernice Claudine Walker **MIDDLLETON**, Administratrix and Personal Representative of the Estate and Succession of Daniel H. Middlleton, deceased, et al., Libellants,

v.

**UNITED AIRCRAFT CORPORATION,** Respondent.

United States District Court S. D. New York.
March 29, 1960.

Speiser, Quinn & O'Brien, New York City, for libellants, Robert A. Dwyer, New York City, of counsel.

Mendes & Mount, New York City, for respondent. Kenneth R. Thompson, George W. Clark, New York City, of counsel.

LEVET, District Judge.

This is an action in admiralty allegedly based upon the Death on the High Seas Act, Title 46 U.S.C.A. § 761 et seq.

The motion seeks an order dismissing the 7th, 8th, 9th, 10th, 11th and 12th alleged causes of action set forth in the libel for failure to state claims upon which relief can be granted, pursuant to Rule 27 of the Rules of Practice in Admiralty and Maritime Cases, 28 U.S.C.A.

The libel alleges that on or about June 1, 1958, the pilot, Daniel H. Middlleton, and passengers Edward Cheramie, Jr., Benjamin H. Raynor, Owen J. Sandoz, Floyd J. DeRoche and Robert E. White were fatally injured as a result of the crash of a helicopter, manufactured by the respondent United Aircraft Corporation (hereinafter designated as "United"), but then owned by Humble Oil & Refining Company and operated by Rotor Aids, Inc., the employer of the pilot, in the waters of the Gulf of Mexico approximately 25 miles southwest of Grand Isle, Louisiana, and more than a marine league from the shores of the State of Louisiana.

The 7th alleged cause of action is for breach of implied warranty resulting in the death of the pilot; the 8th, 9th, 10th, 11th and 12th alleged causes of action are for breaches of implied warranties resulting in the respective deaths of the five passengers.

The respondent contends that the aforesaid causes of action, based upon breach of implied warranty, must be dismissed for lack of privity between the decedents and the said respondent United.

Title 46 U.S.C.A. § 761 is as follows:

"Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."

■ It is fair to conclude that the breach of an implied warranty is included in the term "wrongful act, neglect or default." McLaughlin v. Blidberg Rothchild Company, D.C.S.D.N.Y., 1958, 167 F.Supp. 714. "To say that one who breaches a duty is without fault is a logical as well as a legal incongruity." Skovgaard v. The M/V Tungus, 3 Cir., 1957, 252 F.2d 14, 17, affirmed, 1959, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed. 2d 524.

The cause of action complained of appears to be a maritime tort. See Dunn v. Wheeler Shipbuilding Corporation, D.C.E.D.N.Y., 1949, 86 F.Supp. 659; Prosser on Torts, 2d Ed. p. 508; Comment by Starke, J., in Parish v. Great Atlantic & Pacific Tea Co., 13 Misc.2d 33, 42, 177 N.Y.S.2d 7 (1958).

■ "Admiralty tort jurisdiction has never depended upon the nature of the tort or how it came about, but upon the locality where it occurred." Wilson v. Transocean Airlines, D.C.N.D.Calif., S.D., 1954, 121 F.Supp. 85, 92. See 1 Benedict, Admiralty, § 127 (6th Ed., 1940) and cases cited therein.

■ "In applying the 'locality' test for admiralty jurisdiction, the tort is deemed to occur, not where the wrongful act or omission has its inception, but where the impact of the act or omission produces such injury as to give rise to a cause of action. In so far as appears from the complaint in this action, the wrongful act charged to defendant produced no actionable injury until the aircraft plunged into the sea." Wilson v. Transocean Airlines, supra, at p. 92. See also Noel v. Airponents, Inc., D.C.N.J., 1958, 169 F.Supp. 348, 350.

Consequently, it appears from the libel that the tort occurred beyond a marine league from the shore of Louisiana.

■ The development of the law with respect to the liability of a manufacturer to a remote vendee or ultimate consumer of the manufactured product is outlined in the 1959 Cumulative Supplement to Vol. 46, American Jurisprudence (Annotations to Section 812, page 937, at pages 55–58). As there stated, the so-called general rule of non-liability stems from an English case which did not involve an action against a manufacturer, but against a contractor.[1]

1. Winterbottom v. Wright, 10 Mees. & Welsb. 109, 152 Eng.Reprint 402. (Chief Judge Ruggles in Thomas v. Winchester, 1852, 6 N.Y. 397, 407–408, summarizes the Winterbottom case as follows: "A. contracted with the postmaster-general to provide a coach to convey the mail-bags along a certain line of road, and B. and others also contracted to horse the coach along the same line. B. and his co-contractors hired C., who was the plaintiff, to drive the coach. The coach, in consequence of some latent defect, broke down; the plaintiff was thrown from his seat and lamed. It was held, that C. could not maintain an action against A.,

This doctrine of non-liability of a manufacturer to a remote vendee because of lack of "privity of contract" so engendered by the dicta in this English case was applied by some of the American courts to relieve manufacturers from liability for negligence, in the absence of fraud or exceptional circumstances. This resulted in spite of the fact that "[T]he later English cases have been regarded by the courts and by legal scholars as definitely repudiating in the British courts any so-called 'general rule' of non-liability of a manufacturer." Ibidem, p. 56. See Annot., Manufacturer's Liability for Negligence Causing Injury to Person or Damage to Property, of Ultimate Consumer or User, 164 A.L.R. 569, 580.

Subsequently, "exceptions" developed to the "general rule" since it was apparent that in some instances a manufacturer should be held liable on grounds of policy to a remote vendee injured by the manufactured product.

In general, the exceptions stem from the celebrated case of Thomas v. Winchester, 6 N.Y. 396, 397 (1852)[2] which is usually regarded as the parent of the "dangerous instrumentality doctrine." "This doctrine originally allowed recovery by the remote vendee only when injury to him was caused by an article which was 'inherently dangerous in itself,' such as poisons, drugs, guns, explosives, inflammable oils, and, in some early cases, articles of foodstuff for internal human consumption." (Ibidem, p. 56)

Under the modern doctrine there is little doubt but that a person who has had no direct contractual relations with a manufacturer may recover from such manufacturer for damages to property caused by the negligence of the manufacturer in the same manner that such a remote vendee or other third person

can recover for personal injuries. Annot., 164 A.L.R. 569, 593.

"An 'imminently dangerous' article is one which, although safe to be used for the purpose intended if properly constructed, by reason of its defective construction injury may reasonably be apprehended to any one properly using the article for the purpose for which it was intended. * * * Articles which, if defective, may become imminently dangerous to life and limb include automobiles and foodstuffs. * * *" 46 Am. Jur. 940, 941.

Obviously, the helicopter involved in the instant action is such a dangerous article. The language of Judge Cardozo in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696 (1916), used with reference to the automobile there, is applicable to the helicopter here. "If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. * * * There must also be knowledge that in the usual course of events the danger will be shared by others than the buyer." (p. 389, 111 N.E. p. 1053, L.R.A.1916F, 696)

A restatement of those basic principles is embodied in Section 395 of the Restatement of the Law of Torts and a libel alleging a maritime tort in phrases adapted from the complaint in MacPherson has been upheld. Dunn v. Wheeler Shipbuilding Corp., D.C.E.D.N.Y., 1949, 86 F.Supp. 659, 660 (a trawler). See Sieracki v. Seas Shipping Co., 3 Cir., 1945, 149 F.2d 98, affirmed, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (steamship).

With liability of the manufacturer to one not in privity with him on a negli-

for the injury thus sustained. The reason of the decision is best stated by Baron Rolfe: A.'s duty to keep the coach in good condition, was a duty to the postmaster-general, with whom he made his contract, and not a duty to the driver employed by the owners of the horses.")

2. "In this case the defendant was a manufacturing druggist. He negligently put up, labeled, and sold as extract of dandelion, which is a simple and harmless medicine, a jar of extract of belladonna, which is a deadly poison." [Ibidem, p. 57, Note 14.14)

gence theory established, it is but one logical step forward to allow recovery against a manufacturer on a breach of warranty theory by one not in privity with him.

As stated by Dean Prosser:

"With the liability of the manufacturer to the ultimate consumer once established on the basis of negligence, it was to be expected that some attempt would be made to carry his responsibility even further, and to find some ground for strict liability which would make him in effect a guarantor of his product, even though he had exercised all reasonable care. In recent years a considerable impetus has been given to this attempt, which has met with the approval of every legal writer who has discussed it, by an increased feeling that social policy demands that the burden of accidental injuries caused by defective chattels be placed upon the producer, since he is best able to distribute the risk to the general public by means of prices and insurance. Added to this is the difficulty of proving negligence in many cases where it exists, even with the aid of res ipsa loquitur, together with the wastefulness and uncertainty of a series of warranty actions carrying liability back through retailer, jobber and wholesaler to the original maker, the practice of reputable manufacturers to stand behind their goods as sound business policy, * * *." Prosser on Torts, 2d Ed., pp. 506–7.

Prosser further stated:

" * * * two theories have emerged as predominant. One is that the original warranty of the seller 'runs with the title,' as in the case of conveyances of land, and so extends even to a donee of the product. The other, and perhaps the sounder, is that the warranty is a matter of strict liability in tort, which does not depend upon a contract between the parties, and that it arises because the seller, in mar-

keting his goods, has assumed such a responsibility toward any member of the consuming public who may be injured. * * *" Ibidem, p. 508.

" * * * On one theory or another, strict liability is now recognized in food cases in California, Florida, Illinois, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, North Carolina, Ohio, Oklahoma, Pennsylvania, Texas, and Washington, and possibly in Alabama, Arizona, and Kentucky." Ibidem, pp. 508–9.

The doctrine of liability of the manufacturer to remote users without the so-called "privity of contract" has been sustained in respect to other items than food. There is no reason why recovery should be allowed in food and related cases and denied in others so far as the privity requirement is concerned. Spence v. Three Rivers Builders & Masonry Supply, Inc., 1958, 353 Mich. 120, 90 N.W.2d 873, 878; Harper & James, Law of Torts, Vol. 2, p. 1573; Hinton v. Republic Aviation Corporation, D.C.S.D. N.Y., 1959, 180 F.Supp. 31.

There is, in my opinion, no reason why the rule in the federal courts with respect to privity should be based upon an ancient error. As stated by Starke, J., in his review of New York cases in Parish v. Great Atlantic & Pacific Tea Co., supra:

"There is no earthly reason why the pernicious life of the privity requirement (Miller, supra, [N.Y. State Bar Bull., Oct. 1952,] p. 315) persists insofar as warranty actions are concerned when as far back as 1916 it had been removed from the negligence action (MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696) * * *." 13 Misc.2d 33, 46, 177 N.Y.S.2d 20.

Admiralty courts have not been reluctant to consider manufacturers liable to remote parties. Dunn v. Wheeler Shipbuilding Corp., D.C.E.D.N.Y., 1949, 86 F.Supp. 659; Sieracki v. Seas Ship-

ping Co., 3 Cir., 1945, 149 F.2d 98, affirmed, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

In view of the modern trend, as previously discussed, an action based on the breach of an implied warranty should not be dismissed because of the lack of privity between the plaintiff and the defendant. See Siegel v. Braniff Air-Corporation, 1960, D.C.S.D.N.Y., 204 F. Supp. 861 (law of Texas); Conlon v. Republic Aviation Corporation, D.C.S.D.N.Y., 204 F.Supp. 865 (law of Michigan).

It must be noted that the question here involved is not the *nature* of liability; that is the province of the trial court. The sole question is whether the libellants are precluded from attempting to assert a claim against the manufacturer because of the absence of a direct contractual relationship with such a respondent. As heretofore indicated, the gravamen of the claim asserted by the libellants and attacked by the respondent is basically tort—the violation of a duty to persons such as the libellants. This motion tests solely the right of the libellants to invoke such a claim.

Obviously, the trial court has the duty of determining the questions of proximate cause, the nature of the liability, the relationship of manufacturer and operator, the effect of maintenance and any other relevant factual issues.

It may be argued that the determination that privity is not required is a drastic innovation. The progressive decline of the older rule, based as it was on an infirm and fallacious foundation, is clearly evident. The fact that a manufacturer of an aircraft located in Connecticut may become involved in a disaster happening in the Gulf of Mexico may have unfortunate aspects, but that is not determinative of the question at issue. This happens in respect to other obligations. The fact that modern life and developments, such as transportation, have taken on complex relationships is no anomaly. Complex relationships result in complex responsibilities. If life is complex, so are the laws of human relationships, which are the results thereof.

The arguments against the requisite of privity may be summarized as follows:

1. The decisional approach which requires privity in breach of implied warranty actions is based upon fallacious reasoning.

2. While some courts have followed the earlier cases requiring privity, the fallacy of this approach has become apparent in many jurisdictions and the privity doctrine has been discarded in cases involving food.

3. The requirement of privity in negligence causes of action has been discarded, particularly in cases where the product involved is "a thing of danger".

4. The same considerations which have prompted the demise of the privity requisite in negligence actions and in implied warranty actions involving food are present in this breach of warranty action involving an aircraft. The nature of this product is one which may well place life and limb in danger if that product is defective.

5. There has been no logical or realistic reason advanced why privity should be retained in a breach of implied warranty case. The trend is toward the abrogation of this anachronism.

Accordingly, the respondent's motion is denied.

So ordered.