Ruth M. NOEL et al., Libellants,

v.

UNITED AIRCRAFT CORP.,
Respondent.

No. 1781.

United States District Court
D. Delaware.

April 24, 1962.

Murray M. Schwartz, Wilmington, Del., Stephen M. Feldman and Joseph G. Feldman, of Feldman, Feldman & Feldman, Philadelphia, Pa., for libellants.

William Prickett, of Prickett, Prickett & Tybout, Wilmington, Del., for respondent.

LAYTON, District Judge.

This is a ruling on a motion under 28 U.S.C.A. Admiralty Rule 23 by Libellants to amend their libel by adding a claim sounding in breach of implied warranty of fitness in an action for wrongful death brought under the Death on the High Seas Act (hereinafter cited DOHSA).[1]

Libellants are the personal representatives of Marshall L. Noel who was a passenger on a plane which caught fire and crashed into the high seas on June 19, 1956, while en route from New York City to Caracas, Venezuela. All aboard were killed. The airliner was owned and operated by Linea Aeropostal Venezolana (L.A.V.), a Venezuelan airline company, which is not a party here. Respondent was the manufacturer of the propellers and related parts of the plane. Respondent allegedly sold the propellers directly to L.A.V. in New York prior to the time of the accident. The libel charges that a defect in the design or manufacture of the propeller caused the crash. After two years of discovery on the issues of negligence and damages, Libellants have moved to amend their libel by adding a cause of action based upon breach of implied warranty of fitness and merchantability of the propellers and related parts to all whom it knew would ride in the plane, including the decedent.

Respondent opposed the amendment because of unreasonable delay by Libellants in making the motion; because the amendment seeks to insert a completely new cause of action which is now barred by the statute of limitations; and, particularly, because privity is lacking between decedent and respondent.

The first two reasons are not found to be persuasive and the remainder of this opinion will be directed to the question whether the DOHSA provides a cause of action for injury or death of an airline passenger against the manufacturer of the airplane's propellers based upon breach of implied warranty of fitness.

It is axiomatic that the amendment cannot be allowed unless it states a claim upon which relief can be granted.

Whether a claim can be based upon implied warranty of fitness and merchantability under the circumstances here alleged depends on which law is found to be controlling. In a previous opinion,[2] it was determined that the law of the airliner's flag, namely the law of Venezuela, cannot be invoked; that Section Four of the DOHSA is inapplicable here;[3] and that Libellants must prevail, if at all, exclusively by way of Section One of the DOHSA.[4] Section One reads as follows:

"Whenever the death of a person shall be caused by *wrongful act, neglect, or default* occurring on the high seas beyond a marine league

1. 46 U.S.C.A. §§ 761–768.

2. Noel v. United Aircraft Corp., 202 F. Supp. 556 (D.Del.1962).

3. 46 U.S.C.A. § 764.

4. 46 U.S.C.A. § 761.

from the shore of any State * * * the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, *in admiralty*, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation *which would have been liable if death had not ensued.*" (Emphasis supplied.)

Originally, the admiralty, as did the common law Courts, denied a right of action for damages for death on the high seas. The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886); 1 Benedict, on Admiralty § 140 at 372 (6th Ed. 1940). However, in 1920, Congress passed the DOHSA permitting the personal representatives of a decedent to institute an action for wrongful death on the high seas. Since Libellants had nothing before Section One of the DOHSA was passed, Section One gives them all they now have.[5]

■ To determine what law governs this action and whether implied warranty of fitness is a claim upon which relief can be granted, the sole reference must be to the Act itself, legislative intent and past Court construction of its terms.

■ The Act expressly provides that actions under Section One are brought "in admiralty." Respondent does not question the settled view that wrongful death due to airplane accidents over the high seas is a maritime tort falling within admiralty jurisdiction.[6] Nor does Respondent question that the words "in admiralty" require that actions under Section One be brought exclusively in admiralty forums. Ann. 66 A.L.R.2d 1002.

■ Respondent's contention apparrently is that this admiralty forum must look to state law in determining whether or not the implied warranty of fitness amendment states a valid claim. Respondent cites Prashker v. Beech Aircraft Corp., 258 F.2d 602, 76 A.L.R.2d 78 (3d Cir. 1958), cert. den. 358 U.S. 910, 79 S.Ct. 236, 3 L.Ed.2d 230, which adhered to the rule that federal Courts in diversity cases must apply the conflicts rules of the state in which the Court sits.[7] Applying Delaware conflicts rules to the facts here presented, Respondent argues that this Court must apply the law of the state where the sale of the propellers from Respondent to L.A.V. (the airline company) was made, namely New York.[8]

5. Being a passenger, Noel is not entitled to sue under the Jones Act, which gives death action rights to seamen only. 46 U.S.C.A. § 688. Nor have Libellants claimed rights under any state death act. At one time, some state death acts were given extraterritorial effect. See, e. g., The Hamilton, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264 (1907). However, it seems probable that the Death on the High Seas Act supersedes all state death act remedies on the high seas. Wilson v. Transocean Airlines, 121 F.Supp. 85, 88–91 (N.D.Calif.1954) and authorities therein cited.

6. D'Aleman v. Pan American World Airways, Inc., 259 F.2d 493, 495–96 (2d Cir. 1958); Wilson v. Transocean Airlines, 121 F.Supp. 85, 93 (N.D.Calif. 1954); National Airlines, Inc. v. Stiles, 268 F.2d 400, 402 (5th Cir. 1959); Trihey v. Transocean Airlines, Inc., 255 F.2d 824, 826 (9th Cir. 1958); Lavello v. Danko, 175 F.Supp. 92 (S.D.N.Y.1959).

7. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

8. In its brief, Respondent argues that the sale of the propellers took place in Connecticut and therefore that Connecticut law should be applied. The libel clearly alleges, however, that the sale took place in New York. Respondent has urged that the privity requirement is a bar to assertion of implied warranty under both New York and Connecticut law. It would seem, however, that Respondent's reliance on the privity requirement in these two states may be misplaced. See the recent cases of Hamon v. Digliani, 148 Conn. 710, 174 A.2d 294 (Supr.Ct. of Errors Conn.1961); and Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (N.Y. Ct.App.1962) abolishing the privity requirement in situations where manufacturer advertising has induced consumer reliance on the quality of a product.

Jurisdiction in all the cases cited by Respondent was based on diversity of citizenship, and thus they are readily distinguishable from the case at bar, in which jurisdiction is based on a federal statute. Besides, this Court thinks that the application of the law of New York, or of any other state, to Libellants' rights cannot be justified by the mere fact that this federal Court is sitting in Delaware. Noel's death cut off any rights Libellants may have had in New York and in Delaware except as those rights may have been preserved by a wrongful death act. Delaware conflict rules alone cannot empower this Court to give Noel rights under State law when such rights do not otherwise exist. No rights are claimed by Libellants under any state death act. And no authority may be found in the Death on the High Seas Act for applying the substantive law or conflict rules of particular states.

Indeed, application of State law here would directly conflict with Congressional intent in passing the Act. The Committee report stated:

"The general purpose of the measure is to give a uniform right of action in the United States admiralty courts for death by negligent acts occurring on the high seas * * *. [State Wrongful Death Acts], diverse in their terms and conflicting in their remedies, are but a poor makeshift for the uniform simple legislation which Congress alone can enact. The present bill is designed to remedy this situation by giving a right of action for death to be enforced in the courts of admiralty both in rem and in personam. The right is made exclusive for deaths on the high seas, leaving unimpaired the rights under state statutes as to deaths on waters within the territorial jurisdiction of the states." [9]

Application of state law here would defeat the very uniformity which Congress sought to promote when the Act was passed.

In addition, the better reasoned opinions of the Courts suggest that the words "in admiralty" require that Section One be construed in the light of federal maritime, rather than state, law. Wilson v. Transocean Airlines, 121 F.Supp. 85 (N.D.Calif.1954); Middleton v. Luckenbach S. S. Co., 70 F.2d 326, 328-29 (2d Cir. 1934). In fact, the Supreme Court of the United States has said that any application of state law which conflicts with uniform federal admiralty law, invades the exclusive jurisdiction of Congress over admiralty and is, therefore, unconstitutional. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).[10] In a case such as this, where no overriding state interest appears, it seems that the Jensen rule still controls. Kossick v. United Fruit

9. Sen.Rep. No. 216, 66th Cong., 1st Sess.; H.R.Rep. No. 674, 66th Cong., 1st Sess. See also Debates on the Floor of Congress, 59 Cong.Rec. 4482–4486. See analysis of legislative history in Wilson v. Transocean Airlines, 121 F.Supp. 85 (N. D.Calif.1954); Higa v. Transocean Airlines, 230 F.2d 780 (9th Cir. 1955).

10. Subsequent court decisions have restricted the scope of the Jensen Rule. In death actions, where the tort involves navigable waters within the jurisdiction of state courts, state law must be followed by admiralty as a whole. Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959). The precise amount of state law applied in such admiralty death actions still seems uncertain. See Hess v. U. S., 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960); Goett v. Union Carbide Corp., 361 U.S. 340, 80 S.Ct. 357, 4 L.Ed.2d 341 (1960); Anthony v. International Paper Co., 289 F.2d 574, 578 (4th Cir. 1961). The Jensen Rule has even been undermined where the tort has occurred on the high seas. An overriding state interest was held to require application of state workmen's compensation laws instead of admiralty principles and the Death on the High Seas Act in King v. Pan American Airlines, 166 F.Supp. 136 (N.D.Calif. 1958), aff'd 270 F.2d 355 (9th Cir.1959), cert. den. 362 U.S. 928, 80 S.Ct. 753, 4 L.Ed.2d 746 (1960). However, no such overriding state interest has been urged by the parties here, and none has been found by the Court.

Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed. 2d 56 (1961).

The Court concludes that the intent of Congress and authoritative decisions of the Courts require that Libellants' rights under Section One of the DOHSA be determined exclusively in the light of federal maritime law.

It must now be decided whether the words "wrongful act, neglect, or default" in Section One of the DOHSA permit the estate of an airplane passenger killed in a crash over the high seas to recover from the manufacturer of a defective airplane part, which allegedly caused the fatal accident, upon the theory of a breach of implied warranty of fitness.

▬ Respondent insists that the quoted language means negligence and nothing more. Some support may be found for this view for, admittedly, the word "negligence" appears repeatedly throughout the Committee Reports without mention of theories other than negligence.[11] However, the very language of the Act suggests that something more than negligence is intended. Had Congress meant litigants to benefit only from negligence theories, it could have so indicated in a manner admitting of no doubt by employing the words "neglect" or "negligence" alone. Instead, the words "wrongful act" and "default" are added. It is an accepted rule that a statute will be construed, where possible, to give independent meaning to each word used in the enactment. Middleton v. Luckenbach S. S. Co., 70 F.2d 326 (2d Cir. 1934) cert. den. 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674. The words "wrongful act" and "default" connote something more than negligence, as the Third Circuit Court recently held in Tungus v. Skovgaard, 252 F.2d 14 (1957), aff'd 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed. 2d 524. There the identical language, "wrongful act, neglect, or default", appearing in the New Jersey Wrongful Death Act, N.J.S.A. 2A:31–1 was being construed. The Court said:

"The nature of the conduct which will create liability under the New Jersey statute is of crucial importance. The legislature describes it as 'wrongful act, neglect or default.' It is presumed that the legislature did not employ useless verbiage and that each word has independent meaning (citations). The conduct required to impose liability, therefore, is not limited to that conduct embraced in the historical concept of negligence. The words encompass something more." 252 F.2d at 17.

The Court was there considering only whether the New Jersey Death Act, with identical language, included unseaworthiness. It was decided that it did. Subsequently, it was squarely held by a District Court that breach of unseaworthiness is a "wrongful act, neglect, or default" within the meaning of the DOHSA and that the Act does not restrict litigants to negligence theories of recovery. McLaughlin v. Glidberg Rothchild Co., 167 F.Supp. 714 (S.D.N.Y.1958).

▬ From this, Libellants argue that a breach of implied warranty of fitness may well be encompassed by the word "default." As an abstract matter, this may be so. But there is more to the case than this. By its terms, Section One limits liability to those who "would have been liable if death had not ensued." This necessarily is a restriction on the scope of the words "wrongful act, neglect, or default." Only those wrongful acts, neglects, or defaults which would produce causes of action for a living person are preserved by Section One. This construction of Section One implements the Congressional purpose in passing the Act. Congress wished only to remove the inequity existing under the common law whereby rights of recovery for torts on the high seas ceased at death. There is nothing in legislative history warranting a construction of Section One produc-

---

11. Sen.Rep. No. 216, 66 Congress, 1st Session; H.R.Rep. No. 674, 66th Congress, 1st Session.

ing greater rights upon death than exist for injury. Thus, we must ask what kind of action Mr. Noel could have maintained if death had not ensued as a result of this accident. The Supreme Court has given the answer. It seems clear that rights and liabilities arising from personal injuries within the reach of admiralty jurisdiction are measurable exclusively by the standards of maritime law. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). See also Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). Section One gives nothing more. The Court concludes that breach of implied warranty of fitness is a "default" within the scope of Section One only if it is also cognizable under the general maritime law.

With the exception of one case, Middleton v. United Aircraft Corp., 204 F. Supp. 856 (S.D.N.Y.1960), to be discussed at a later point, an implied warranty of fitness and merchantability has never been successfully asserted in admiralty, so far as research has disclosed. This may well be because an implied warranty of fitness is usually associated with the sale of goods, and because the sale of a ship has traditionally been deemed outside the scope of admiralty jurisdiction. Gilmore and Black, Law of Admiralty 25 (1957); The Ada, 250 F. 194 (2d Cir. 1918); Grand Banks Fishing Co. v. Styron, 114 F.Supp. 1 (D.Me.1953). But see Flota Maritima Browning v. Ciudad de la Habana, 181 F. Supp. 301 (D.Md.1960). Another reason why an implied warranty of fitness is unknown to admiralty may be that it has always been possible to bring actions under this theory on the civil side of the court. For instance, there are a number of cases in which breach of implied warranty has been asserted in connection with the sale of barges or tankers. Excelsior Coal Co. v. Gildersleeve, 160 F. 47 (2d Cir. 1908) (Breach of warranty of fitness of coal bins which collapsed after sale of a barge); Anderson v. Owens, 14 Alaska 353, 205 F.2d

940 (9th Cir., 1953) (Breach of warranty on sale of a tug. Law of Washington applied); Compagnia Italiana Trasporto Olii Minerali v. Sun Oil Co., 43 F.2d 683 (2d Cir. 1930) (Breach of warranty of fitness on sale of a tanker. Law of N.Y. applied). None of these cases applied admiralty principles. All relied upon the sales or contract law of particular states. In the only Supreme Court case found on point it was held that the law governing the sale of vessels was the sales law of the state where the contract of sale was made. Bulkley v. Honold, 60 U.S. (19 How.) 390, 392, 15 L.Ed. 663 (1856). The Court concludes that an implied warranty of fitness and merchantability is a phenomenon of state sales law, and, as such, is unknown to the federal maritime law.

██ Libellants take the position that an action for breach of warranty of fitness is inherent in the law of admiralty by analogy with the duty of a shipowner to furnish a seaworthy vessel, and therefore that Noel has the right here to bring an action based upon the breach of an implied warranty of fitness of the propellers. This ignores completely the fact that the action here is not against the ship but the manufacturer of one of her parts. Aside from this, the argument is a double edged sword for, traditionally, the admiralty has limited the right of action based upon unseaworthiness to seamen. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903). Noel was a passenger, and in admiralty law the right of injured passengers to recovery has been historically limited to negligence theories. Thus, in Norris, Maritime Personal Injuries, Section 87, at page 232, it is said:

"The vessel is not the insurer of the safety of the passengers. Since the injured passenger's remedy against the vessel is predicated on negligence, fault with respect to the structure of the vessel, want of proper care or negligent conduct of the ship's officers and crew, which fault proximately caused the injury, must

be alleged and proved. Merely because an accident occurred to a passenger will not, of itself, make the carrier liable."

See also Gilmore & Black, Law of Admiralty 22 (1957); 3 Benedict, on Admiralty § 488 at 375 (6th Ed. 1940). For a time there appeared a growing tendency on the part of the Supreme Court to increase the classes of persons to whom a shipowner owed the absolute duty of furnishing a seaworthy ship. See, e. g., Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (a stevedore); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L. Ed. 143 (1953) (a carpenter working for an independent contractor aboard a ship). Nevertheless, this tendency was brought to a halt in United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959) and West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed. 2d 161 (1959), so that now the right of action appears to be limited strictly to seamen or those doing traditional seamen's work.

Libellants next argue that if there is no inherent right in the law of admiralty permitting a passenger to maintain an action for injuries based upon the unseaworthiness doctrine, then admiralty should borrow the well-established state law principles permitting persons injured by poisoned foods, drugs, drink and dangerous instrumentalities to bring an action directly against the manufacturer based upon a breach of implied warranty of fitness. To this Respondent replies that while a number of Courts do permit a person injured through the use of a product to bring suit directly against the manufacturer, nevertheless, such suits cannot be maintained in the absence of privity of contract and no privity exists here between Libellants and Respondent. A substantial portion of the briefs on both sides is directed to this controversial question. However, a consideration of a number of cases and leading articles on the subject lead to the conclusion that both parties have misconceived the importance of the point for not only does it appear from the Court decisions that the doctrine of privity is gradually being discarded, but also, a reading of Seas Shipping Co. v. Sieracki, 328 U.S. 85, 90–95, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) indicates that the Supreme Court of the United States would abolish the requirement of privity in admiralty if the question were squarely raised.[12]

The real point at issue here, in my judgment, is not the presence or absence of privity but whether admiralty, which heretofore has not recognized suits based upon breach of implied warranty by passengers against a ship or the manufacturer of one of its parts, should now incorporate what amounts to a drastically new concept into the body of its law based upon the rationale that manufacturers by means of insurance and raising prices are better able than the injured consumer to absorb losses in cases of accidents resulting from defective parts.

In the absence of any direct indication in the DOHSA or the body of admiralty law itself pointing to an answer to this troublesome question, recourse must be had to a weighing of the various factors for and against the desirability of the incorporation into the body of federal maritime law of this new theory—a theory which has not as yet evolved into settled law even in the state Courts.

12. The whole question is in a state of confusion. An able discussion by Prosser, Law of Torts 497–519 (1955) analyzes the subject fully. A reading of this discussion and a number of Court decisions indicates the probability that except in cases involving poisoned foods, impure drugs or drink and explosives, the majority of the Courts still refuse to permit an injured consumer to sue the manufacturer of a defective thing directly based upon breach of implied warranty in the absence of privity. In a number of recent cases, the need for privity has been eliminated because of reliance by the injured consumer upon warranties or other statements contained in advertising accompanying the product. See the exhaustive annotation on the privity requirement in 75 A.L.R.2d 39.

There are three considerations urged in favor of its adoption. As to the first, there exist the numerous decisions, no doubt representing the majority view today, that Courts will not require the presence of privity between the manufacturer and injured consumer in cases involving poisoned food, impure drugs and drink, explosives, etc. In addition, Libellants cite a fast-growing group of decisions including Hamon v. Digliani, 148 Conn. 710, 174 A.2d 294 (1961); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960); Randy Knitwear, Inc. v. American Cyanamid Co. et al., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (Ct. of Appeals, N.Y., 1962) and Rogers v. Toni Home Permanent Co., 167 Ohio St. 244, 147 N.E.2d 612, 75 A. L.R.2d 103 (1958) which apparently have abolished the need for privity in cases involving injuries resulting from the reliance by the public upon modern, high-pressure advertising. See Ann. 75 A.L.R. 2d 112. The rationale of these decisions is that manufacturers should not on the one hand be permitted irresponsibly to advertise products in glowing terms and on the other to hide behind the shield of privity when sued by a consumer injured through the use of their product. Illustrative of the reasoning of Courts in these recent decisions is the language of the New York Court of Appeals in Randy Knitwear, which said:

"The rationale underlying the decisions rejecting the privity requirement is easily understood in the light of present-day commercial practices. It may once have been true that the warranty which really induced the sale was normally an actual term of the contract of sale. Today, however, the significant warranty, the one which effectively induces the purchase, is frequently that given by the manufacturer through mass advertising and labeling to ultimate business users * * *."

These decisions go on to cast doubt on the present majority view that warranty is based upon a contractual concept and conclude that tort, not contract, is the true basis underlying the warranty theory.

An airplane passenger clearly is not within the class of persons protected by the rationale of the poisoned food cases or the advertising cases. If he has relied on any advertising, it is upon the advertising of the airline. Mr. Noel probably did not even know who manufactured the propellers on the plane which carried him to his death. But once we leave the so-called poisoned foods and advertising fields, Libellants are able to cite but two appellate decisions wherein (aside from negligence concepts) an injured consumer has been permitted to recover upon a breach of implied warranty of fitness theory in the absence of privity.[13]

Secondly, there are four decisions involving airline crashes over the land where Courts have permitted actions directly against the manufacturer upon a breach of implied warranty. They are Garon v. Lockheed Aircraft Corp., 7 CCH Aviation Cases 17, 418 (Calif. Superior Ct. Los Angeles County, May 29, 1961); Siegel v. Braniff Airways, Inc., 204 F. Supp. 861 (S.D.N.Y.1960); Hinton v. Republic Aviation Corp., 180 F.Supp. 31 (S.D.N.Y.1959) and Conlon v. Republic Aviation Corp., 204 F.Supp. 865 (S.D.N. Y.1960). With the exception of Garon,[14] these were all diversity cases all decided by the same Judge relying on state decisions that privity of contract was not required in actions based upon breach of implied warranty. To the contrary, are Egan v. Kollsman Instrument Corp., 7

---

13. Peterson v. Lamb Rubber Co., 54 Cal. 2d 339, 5 Cal.Rptr. 863, 353 P.2d 575 (1960). A grinding wheel exploded injuring an employe's eye. Held that privity of contract was necessary in California but privity was present because the employer was one of the "commercial family" of the defendant. Spence v. Three Rivers Builders and Masonry Supply, Inc., 353 Mich. 120, 90 N.W.2d 873 (1958). The case involved defective building blocks.

14. Garon relied on Peterson v. Lamb Rubber Co., supra.

CCH Aviation Cases 17,292 (March 1, 1961); and State of Md. for the use of McClanan v. Brantly Helicopter Corp., 7 CCH Aviation Cases 17, 471 (E.D.Pa. Feb. 20, 1961) where it was held that in the absence of privity, estates of passengers could not maintain actions based upon breach of warranty directly against the manufacturer. None of these decisions are of great significance for they do not deal with admiralty and are all preoccupied with the question of privity.

Finally, there is Middlleton v. United Aircraft Corp., 204 F.Supp. 856 (S.D. N.Y.1960) by the same Judge who decided Hinton, Conlon and Siegel. This is an admiralty decision under the DOHSA involving a suit by the estate of the pilot of a helicopter which crashed over the high seas. The Court, relying upon negligence principles grounded upon the dangerous instrumentality doctrine, and with little or no analysis of the DOHSA or of admiralty concepts, proceeded to hold that admiralty might entertain a suit based upon a breach of implied warranty regardless of the lack of privity. The important and key question, namely whether admiralty, in which warranties in favor of passengers were heretofore unknown, should henceforth entertain suits on behalf of passengers against manufacturers of airplane or related parts based upon a breach of warranty of fitness *whether or not privity was present,* was not discussed. While the decision, being in admiralty, is entitled to respect, the failure of the Court to recognize and dispose of a number of valid arguments against the result there reached detracts from its weight.

As elsewhere noted, Prosser, Law of Torts, 497–519 (1955) is the leading advocate of the abolishment of privity of contract. See also Prosser, Assault upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960). Dean Prosser's treatment of the subject is articulate and is cited by many of the Courts which have recently permitted consumers injured by the use of products to sue the manufacturer directly regardless of the presence of privity of contract. Of course, his conclusions do not purport to bear upon the specialized field of admiralty.

In the main, Dean Prosser advances two basic reasons in opposition to the prevailing majority rule which requires privity of contract between the parties in warranty actions. First, he cites the evil inherent in the circuity of actions resulting from the majority view requiring privity which compels the injured consumer originally to sue the retailer of the product causing the injury, who, in turn, must sue the manufacturer. However, whether this argument is valid in admiralty is debatable for if the estate of the deceased passenger were first to sue the airline, it would at once be faced with the Warsaw Convention which would limit recovery to $8500. 2 CCH Aviation Law Rep. ¶27,011. So that the reason in favor of a direct suit against the manufacturer here is not to avoid circuity of actions but to avoid the limitations of the Warsaw Convention.[15]

Secondly, it is argued that the manufacturer is best able to absorb losses incurred by injured consumers of defective products by means of increased prices and

15. Which in turn creates the serious anomaly that the airline, well protected by the Warsaw Convention, may escape suit altogether while the manufacturer of an alleged defective part, whose liability is not limited in any fashion, stands to bear the whole brunt of judgments resulting from a major air disaster over the high seas.

The Warsaw Convention is a treaty entered into by nearly all leading nations including the United States. Its purpose is to limit the liability of airlines flying over the high seas against disasters

much in the same manner as shipowners may now limit their liability under 46 U.S.C.A. § 183. The Convention has been the subject of frequent criticism but remains today an expression of the public policy of this country insofar as concerns suits against airlines as the result of crashes or disasters occurring over the high seas. Since recovery by the estates of decedents killed in airline crashes over the high seas is governed by the DOHSA, the Convention would presumably represent a policy of the federal maritime law.

insurance. Both propositions are debatable and will be treated separately.

Whether or not industry is best able to absorb losses by means of raising prices is a conclusion based upon economic policy historically within the province of Congress or a legislature. Courts are peculiarly unfitted to make such findings based as they are upon the views of individual judges or legal writers whose whole careers have been spent in pursuits far removed from the rough and tumble of the market place.[16] An interesting legal article challenging the judge-made proposition that industry can best absorb losses to the public through the medium of increased prices has this to say:

> "The fact is, however, that most of our manufacturing industries are not monopolies in which the manufacturers can dictate price. In these industries prices are determined by a host of factors. The intensity of competition, the stage of the business cycle, the facility with which capital can move in and out of the industry, changes in public desires and tastes, and technological developments in the field are only a few of the variables constantly influencing price and causing price fluctuations. As a result of these economic factors it may often be a matter of pure chance as to whether a given manufacturer or industry can adjust its price structure to absorb a new cost thrust upon it. In the case of an individual, an increase may mean pricing himself out of the market. In the case of an industry a substantial general addition to price may have a devastating effect upon marginal producers. In some industries such additions may be substantial, for product liability costs are high. The representative of one manufacturer with whom the writer has discussed the general sub-

ject estimated that product liability cost for his company, even under the present system is about one and one-half million dollars a year.

\* \* \* \* \* \*

> "It is a common failing to overlook the problem of the small manufacturer. When social reformers speak of 'manufacturers' they generally assume that all manufacturers are in the position of U. S. Steel Corporation or General Motors or Standard Oil Company of New Jersey. It may very well be (leaving out considerations of justice) that large organizations of this character can absorb or distribute an item of increased costs such as that which would result from the imposition of strict liability. But many manufacturers are in a totally different situation. Their position in the industry is vulnerable and their competitive situation delicate. It is these comparatively small manufacturers who suffer when additional costs are added without regard to their situation." [17]

Secondly, the argument that industry can absorb losses by means of increased insurance completely overlooks the fact that in airline flights a passenger can easily and inexpensively procure insurance for a given flight through a machine at almost any airport.

There is one other consideration of some importance which should be noticed. It has been stated that passengers may recover from carriers for injuries received aboard ships on negligence theories only. This is true also on land. Cases dealing with passengers injured while riding on common carriers such as railroads, busses, trolley lines and airplanes hold almost universally that carriers are not guarantors of the safety of their passengers but, as in admiralty, owe

16. Legislatures have standing committees which can subpoena and consider the testimony of witnesses expert in all phases of the field after which the committee can report its findings to the whole legislature for debate and vote.

17. Plant, Strict Liability of Manufacturers for Injuries Caused by Defects in Products—An Opposing View, 24 Tenn.L.Rev. 938, 947 (1957).

them the duty of exercising a high degree of care and caution. The following cases involved busses. Bowes v. New England Transportation Co., 126 Conn. 200, 10 A.2d 589, 591, 126 A.L.R. 457 (1940); Baker v. Rose City Transit Co., 361 P.2d 257 (Sup.Ct.Or.1961); White v. Toombs, 164 Kan. 635, 192 P.2d 174. See also Cannon v. Louisville & N. R. Co., 252 Ala. 571, 42 So.2d 340, 343 (1949) (Railroad); Gray v. Brown, 188 Tenn. 152, 217 S.W. 2d 769, 770 (1949) (taxicab); Ann. 73 A.L.R.2d 346, 358-71 (aircraft).

Considerable research discloses that, with the exception of Middlleton, Garon, Conlon and Hinton above discussed, passengers injured on a common carrier have not successfully maintained actions against the manufacturer of an alleged defective part on the carrier. The suit has always been maintained against the carrier.[18] Thus, to permit such actions in admiralty would create the inconsistent result that a passenger on a plane killed in a crash over the high seas would, in a proper case, be entitled to maintain an action against the manufacturer of an alleged defective part on the plane based upon a breach of implied warranty, while a passenger on a bus, or a railroad train or plane over land would, at least under present day theories of recovery, be limited to suits against the carrier based upon negligence concepts.

 The Court has balanced the relevant statute, legislative history, state decisions, and policy considerations in trying to decide whether implied warranty of fitness concepts developed in state jurisdictions should be adopted by admiralty. In its efforts to arrive at a conclusion, no single argument has been found decisive, one way or the other. The balance of considerations is tipped towards denial of the Libellants' motion by the degree of change the Court is asked to make in the law, under the facts here presented. Concededly, admiralty can grow and change by judicial decision to meet the needs of changing social and

merchandizing relationships. Cain v. Alpha S. S. Co., 35 F.2d 717, 722 (2d Cir. 1929), aff'd 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086 (1930). But the role of the Courts in the process of change is not to revolutionize but to adjust. As Mr. Justice Holmes once put it—"I recognize without hesitation that judges do and must legislate, but they can do so only interstitially; they are confined from molar to molecular motions." Dissenting opinion in Southern Pacific Co. v. Jensen, 244 U.S. 205, 221, 37 S.Ct. 524, 531, 61 L.Ed. 1086 (1917). See also Warshauer v. Lloyd Sabaudo S.A., 71 F.2d 146, 147 (2d Cir. 1934), cert. den. 293 U.S. 610, 55 S.Ct. 140, 79 L.Ed. 700 (1934). A state rule that is "so widely accepted as to be construed as a part of the general law of torts" may be incorporated into admiralty, provided the rule is harmonious with the rest of admiralty law. Sieracki v. Seas Shipping Co., 149 F.2d 98, 100 (3d Cir. 1945); Warshauer v. Lloyd Sabaudo S.A., supra. In the Sieracki case, the Court incorporated the negligence doctrines enunciated in MacPherson v. Buick Motor Co. into admiralty. This decision constituted a desirable adjustment by admiralty to state policies that had been crystalized in the Restatement of Torts, § 395, and approved in the great majority of state Supreme Courts.

 The situation is different here. Libellants cannot demonstrate that the rule they propose is "so widely accepted as to be construed as a part of the general law of torts", nor, in this Court's judgment, would the rule they propose be harmonious with existing admiralty law. Libellants have not cited a single decision of a Circuit Court of Appeals, or State supreme court which holds that passengers may benefit from the common law sales warranties. And the Court has found no such case. In addition, Libellants are unable to advance here some of the arguments for expansion of implied warranty liability that the best-reasoned state decisions have

18. This, no doubt, was due to considerations based upon lack of privity, or the disinclination of the Courts generally, using lack of privity as a cloak, to extend the liability of carriers beyond negligence concepts.

found most persuasive. First, in product liability cases, as opposed to cases involving food, leading state decisions have relied heavily on the existence of advertising directed by the manufacturer to the injured consumer, and by which the consumer was misled. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960); Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (N.Y.Ct. of App., 1962); Hamon v. Digliani, 148 Conn. 710, 174 A. 2d 294 (1961). This element of tortious misrepresentation is lacking here. Nowhere does the complaint allege that Respondent made representations by advertising or in any other way, to the passengers. Second, in all state implied warranty cases there has been no doubt that the injured consumer could have sued the retailer directly for breach of implied warranty of fitness, and that the retailer could, in turn, have sued the manufacturer to recoup his loss. The desirability of accomplishing in one suit what would otherwise be accomplished in two has, as was earlier pointed out, been a sound reason advanced for allowing the consumer to sue the manufacturer directly. Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y. S.2d 363, 181 N.E.2d 399 (Ct. of App. N.Y., 1962); Hamon v. Digliani, 148 Conn. 710, 174 A.2d 294 (1961); Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1123–24 (1960). Libellants cannot make this argument. In the case at bar, the Libellants are seeking a recovery against the manufacturer which they cannot have against the airline itself. The liability of a carrier to passengers on sea and on land is restricted to negligence. Gilmore and Black, Law of Admiralty 22 (1957); Norris, Maritime Personal Injuries § 87 at 232 (1959); 3 Benedict, On Admiralty § 488 at 375 (6th Ed.1940); Ann. 73 A.L.R.2d 346, 358–71. Besides, as previously mentioned, the liability of an airline company to passengers for torts occurring on the high seas is further limited by the Warsaw Convention.

2 CCH Aviation LawRep. ¶ 27,011. It would seem to be a circumvention of the Warsaw Convention to allow unlimited recovery by passengers against the manufacturers of airplane parts. Thus, in spite of the fact that they cannot advance some of the strongest reasons for expansion of implied warranty liability, Libellants are asking this Court to extend it into areas not yet reached by the highest Court of any state.

Finally, introduction of implied warranty of fitness into admiralty would not harmonize with existing admiralty policy. Confusion would be created as to the relationship of implied warranty of fitness to the existing admiralty doctrine of unseaworthiness. If unseaworthiness and implied warranty of fitness are the same, the Court has already explained why Supreme Court limitations on the scope of unseaworthiness bar extension of either doctrine in admiralty to embrace manufacturers and passengers. However, if implied warranty of fitness is deemed to be different from unseaworthiness, its introduction into admiralty should be accompanied by careful definition of its boundaries, to avoid confusion with unseaworthiness. The Court has tried and failed to find any meaningful distinctions between the two doctrines. There is no substantial difference between the implied warranty that a propeller is fit and the implied warranty that a propeller is seaworthy (or airworthy). The only important difference lies in the classes of persons owing the duty, and the class of persons protected. If the doctrine of unseaworthiness is to be expanded by calling it "implied warranty of fitness," that expansion should be made by Congress or the Supreme Court, not here.

The Court concludes that implied warranty of fitness should not be incorporated into the general maritime law at this time.

■ To summarize, I hold that the rights of the parties are governed exclusively by Section One of the DOHSA, as construed in the light of federal maritime law; that Section One gives to the estates of decedents only such rights as

living persons would have under the federal maritime law; and that a cause of action in implied warranty of fitness and merchantability (with or without privity) does not presently exist in the federal maritime law. Implied warranty of fitness cannot be pleaded here by analogy to the admiralty doctrine of unseaworthiness, which is a duty owed by shipowners and not manufacturers, and which protects seamen and not passengers. Finally, I hold that admiralty (even though it could) should not at this time adopt the implied warranty of fitness and merchantability doctrine into the federal maritime law. From this, it follows that breach of implied warranty of fitness and merchantability is not a claim upon which relief can be granted under Section One of the DOHSA.

Motion denied.