### THE PINTHIS.

### VICTORY CARRIERS, Inc., v. MORNER.

(Circuit Court of Appeals, Third Circuit. January 26, 1923.)

No. 2938.

1. **Maritime liens ⊂⊃19—Hull of new vessel after launching may be subject to maritime liens.**

When the hull of a new ship has been launched, it becomes a vessel, and a subject of maritime jurisdiction, and may be subjected to liens under Act June 23, 1910, § 1 (Comp. St. § 7783).

2. **Maritime liens ⊂⊃25—Extra reserve engine parts furnished new vessel held supplies for which a lien was given.**

A claim for spare or reserve engine parts furnished to a new and uncompleted vessel after she was launched, by one other than the contractor for her construction, is not one for construction, but for supplies, for which a lien is given by Act June 23, 1910, § 1 (Comp. St. § 7783).

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. Maritime liens ⬸25—Oil-purifying machine, furnished a new ship, held a supply.

    A machine for purifying used lubricating oil, furnished to a new ship, *held* not a part of her construction, but a supply or necessary, for which the furnisher was entitled to a lien.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit in admiralty by Adolph Morner, trading as the Bolinders Company, against the tank ship Pinthis; the Victory Carriers, Incorporated, claimant. Decree for libelant, and claimant appeals. Affirmed.

Runyon & Johnson and Edmund S. Johnson, all of Jersey City, N. J., for appellant.

McDermott, Enright & Carpenter, of Jersey City, N. J. (James D. Carpenter, of Jersey City, N. J., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case Adolf Morner, trading as Bolinders Company, filed a libel against and attached the tank ship Pinthis, whereupon the Victory Carriers, Incorporated, claimed the vessel as owner and disputed the libel, on the ground that libelant's claim was of the same general character involved in Thames, etc., v. The Francis McDonald, 254 U. S. 242, 41 Sup. Ct. 65, 65 L. Ed. 245, and, being nonmaritime, the District Court had no jurisdiction. On the other hand, the libelant contended its claim was not for the completion of the vessel, but was for "supplies or other necessaries * * * to a vessel," and that the District Court took jurisdiction under 36 Stat. 604, which provides:

"That any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel." Comp. St. § 7783.

On final hearing the court below, citing The Hiram R. Dixon (D. C.) 33 Fed. 297, The Sea Lark, 21 Fed. Cas. No. 12,579, Weaver v. The S. G. Owens, 29 Fed. Cas. No. 17,310, The Georgia (D. C.) 32 Fed. 637, and The Charles Spear (D. C.) 143 Fed. 185, held the libel was not for the completion of the vessel, but for the supplies and necessaries contemplated by the act quoted, assumed jurisdiction, and entered a reference to determine what items of the libel fell under the head of supplies and necessaries. The reference found certain items went to the completion of the vessel, and as to this finding and the dismissal of the libel as to them no appeal was taken. As to certain other items, aggregating in value, with interest, $5,363.69, the court, holding they were supplies and necessaries, entered the decree from which the claimant appeals.

[1] The items allowed by the court were spare or extra engine parts, furnished while the hulk was lying in the water and prior to her completion, manning, and trial trip. Was the floating hulk at that time a

vessel, against which the statute quoted gave a lien? The court held with the libelant, and this is alleged to be error. In so holding, we agree with the trial court, for the case of Tucker v. Alexandroff, 183 U. S. 438, 22 Sup. Ct. 195, 46 L. Ed. 264, determined the principle, later modified in Thames Towboat Co. v. The Francis McDonald, 254 U. S. 242, 41 Sup. Ct. 65, 65 L. Ed. 245 and New Bedford Dry Dock Co. v. Purdy, 258 U. S. 96, 42 Sup. Ct. 243, 66 L. Ed ——, that when launched the Pinthis became a vessel. As such she was a subject of maritime jurisdiction, and could be subjected to lien under the statute quoted above.

[2] As to the question whether these liens went to the completion of the vessel, we note this case is not one between an owner and a ship-builder, involving the construction and application of a contract to build and complete a vessel, but is one involving the rights of a third person and the obligation of the ship to such third person. One Christiansen was furnishing and installing on the vessel a secondhand Bollinger engine. Some of the parts of this engine were broken or missing, and Christiansen ordered from the libelant, who was agent for the sale of the Bollinger engine, parts to supply those broken or missing parts. As to them the court below held they were parts which went to the completion of the vessel, and the libelant could not recover for them as supplies, under the statute, and from such holding no appeal was taken by the libelant. But in addition to these parts, which were necessary to put the secondhand engine in working order, the libelant furnished spare or reserve engine parts for the ship, which she would have on board in case of future breakage. It will thus be seen that these spare parts, while they might at some future time be used in the subsequent operation of the vessel, had no part in its present completion. The vessel was operatively complete without them; they could be taken off the vessel without disabling her engine and without lessening her complete working capacity.

Indeed, it will be apparent that, if we depart from the certainty of making a completed vessel the standard and enter the field of extras, spare parts, incidental equipment, and say that such things complete the vessel, we are giving up certainty of the standard of completion for the standard of mere speculation. Moreover, if we hold that it takes duplicate parts to complete the vessel, why may it not be contended that triplicate parts are a better and safer standard of completeness? The truth is that extra reserve parts are factors, not of completion, but of foresight and prudence in reserve equipment. An automobile is completed when it workably moves out of the shop by its own power and equipment. Prudence and foresight suggest it be equipped with extra tubes and tires; but, when the machine is equipped with such extra tires, they are not factors of original construction, but of anticipated need and prudent reserve. So viewing the extra engine parts furnished in this case, we are of opinion the court below rightly held they were not elements of original construction, but rather such supplies as the ship might reasonably place on board, in view of possible future need.

[3] As to the machine used for purifying used lubricating oil, we agree with the court below that it was not embraced in the completion of the ship, yet as an aid to economy and efficiency of operation it does fall within the range of supplies and necessaries which those in control of a vessel might reasonably order.

Finding no error in the decree below, the same is affirmed.