**Dorothy M. CHERMESINO, as she is the Administratrix of the Estate of Angelo J. Chermesino, Libelant,**

v.

**VESSEL JUDITH LEE ROSE, INC., Respondent.**

No. 61-52-S.

United States District Court
D. Massachusetts.

Nov. 7, 1962.

Schlichte & Smith, Dwain B. Smith, Melvin I. Bernstein, Gloucester, Mass., for libelant.

Solomon Sandler, Gloucester, Mass., for respondent.

C. Richard Clark (Stanley N. Dulong) William G. Clark, Jr., Gloucester, Mass., for third-party defendant.

Parker, Coulter, Daley & White, Boston, Mass., for Paulsen-Webber Cordage Corp.

SWEENEY, Chief Judge.

This is a libel by the administratrix of the estate of Angelo J. Chermesino to recover damages under the Death on the High Seas Act, 46 U.S.C. § 761, Count 1, and funeral expenses pursuant to the Ship Owners Liability Convention, Count 2.

*Findings of Fact*

The facts are, for the most part, not in dispute. On December 8, 1961 Angelo J. Chermesino, the mate on the fishing vessel JUDITH LEE ROSE, was killed when a part of the rigging fell on him because an iron shackle pin had broken and released the shackle and gear. The vessel was fishing on the western side of the Grand Banks, more than a marine league from shore. At the time of the accident, the weather was mild, the sea smooth and the wind, northerly, about five miles per hour. The vessel was stopped and the crew were hauling a load of fish, about 3,500 pounds, in the customary manner. As the net was being hauled in, several members of the crew heard a noise in the rigging and immediately the net, stay and gear fell to the deck and on the decedent.

The shackle had a safe working load of 11,300 pounds and a safety factor of about three times that amount, but an inspection after the accident disclosed that the pin was defective. The defect was latent and could not have been visually detected. The shackle had been installed three or four years before the accident and was inspected, along with the rest of the rigging, twice annually.

The last inspection prior to the accident took place in August 1961.

The vessel first went to sea in 1954 and the deceased had been one of the original stockholders of the defendant corporation. He owned ⅟₁₆th of the outstanding shares of the corporation and, at the time of his death, was one of the five directors.

The parties have stipulated that the Death on the High Seas Act is the applicable statute and that the defendant was not negligent. The respondent also does not seriously contest the libelant's assertion that the vessel was unseaworthy;[1] but it argues first, that the obligation of the vessel owner to supply a seaworthy vessel is not absolute, that there should be exceptions. Second, it contends, that even if the vessel is found to be unseaworthy and the deceased one of those protected, the Death on the High Seas Act does not allow recovery for a breach of the warranty of seaworthiness without a showing also of negligence or culpability.

The respondent's first defense is based upon the deceased's dual status as part owner of the respondent and as a member of the crew of the vessel. It argues that this action was "brought by the deceased for his death as a crew member against himself as owner." In the first place, the libel was brought against the corporation, not against Angelo J. Chermesino. Second, the respondent admits that the decedent was a member of the crew and was injured in the course of his duties as such. Is he to be deprived of his rights as a seaman simply because he was also a stockholder of the respondent? See Emery's case, 271 Mass. 46, 170 N.E. 839 (1930).

According to the custom in the fishing industry the care and inspection of the rigging was a responsibility of the owners, and there was testimony that on the "Judith Lee Rose" this responsibility was generally discharged by the de-

1. The cause of the accident in this case is indistinguishable from that in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), where the vessel was found to be unseaworthy.

ceased. But the parties agree that the defect could not, in any event, have been detected. Moreover, there was also evidence, and I find, that the last inspection before the accident was not performed by the deceased. It cannot, therefore, be said that the decedent's own acts were responsible for the accident.

The Death on the High Seas Act, 46 U.S.C. § 761, provides, insofar as material, that "whenever the death of a person shall be caused by wrongful act, neglect, or default * * * the personal representative of the decedent may maintain a suit for damages * * * against the vessel, person, or corporation which would have been liable if death had not ensued." The question presented is whether the words "wrongful act, neglect, or default" encompass a breach of the warranty of seaworthiness.

This is not an entirely novel question. It has been determined in a number of cases brought under state wrongful death statutes—Lee v. Pure Oil Co., 218 F.2d 711 (6th Cir., 1955); Graham v. A. Lusi, Ltd., 206 F.2d 223 (5th Cir. 1953); Mortenson v. Pacific Far East Line, Inc., 148 F.Supp. 71 (D.C.N.D. Cal.1956)—denying a cause of action for unseaworthiness; and Skovgaard v. The M/V Tungus, 252 F.2d 14 (3d Cir., 1957) aff'd 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed. 2d 524 (1959); Halecki v. United New York and New Jersey Sandy Hook Pilots Assn., 251 F.2d 708 (2d Cir., 1958) reversed on other grounds, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959); State of Maryland v. Weyerhaeuser Steamship Co., 176 F.Supp. 664 (D.C.Md.1959); and State of Maryland v. A/S Nabella, 176 F.Supp. 668 (D.C.Md.1959) holding that these statutes give a remedy. The most important of these is Skovgaard, an action under the New Jersey Wrongful Death Statute. The Court of Appeals held that that statute does encompass an action for death caused by the

unseaworthiness of a vessel. It reasoned that the words "wrongful act, neglect or default" are not limited to negligence, that under New Jersey decisions a wrongful act is any act which, with exceptions not relevant, will in the ordinary course, infringe upon the rights of another to his damage. A seaman, or one standing in his shoes, has a right to a seaworthy ship and infringement of that right constitutes a "wrongful act."

The Supreme Court affirmed saying "The Court of Appeals, *en banc*, has given careful consideration to the meaning of the state statute. We cannot say that its conclusion is clearly wrong. Therefore, despite the inherent uncertainties involved, we will not disturb that court's interpretation of the New Jersey law." 358 U.S. at 596, 79 S.Ct. at 509.

The only case which has interpreted the Death on the High Seas Act in this context is McLaughlin v. Blidberg Rothchild Co., 167 F.Supp. 714 (D.C.S.D. N.Y.1958), which held, citing Skovgaard, that a cause of action for death due to unseaworthiness will lie under the Death on the High Seas Act. "The reasoning which supports the construction of the New Jersey statute warrants a like construction of the almost identical phrase in the Death on the High Seas Act," at p. 716.

Although the New Jersey statute differs in one important respect from the Death on the High Seas Act,[2] I agree with the McLaughlin case that the reasoning of Skovgaard still supports a like conclusion under the latter act.

While the Committee Reports, S.Rep. No. 216, 66th Cong. 1st Sess. 3, and H.R.Rep. No. 674, 66th Cong. 2d Sess. 3, lend support to the respondent's position that "wrongful act, neglect, or default" means negligence, in that the word is frequently used, the quoted language, itself, suggests that something

2. N.J.S.A. 2A:31-1 provides "When the death of a person is caused by a wrongful act, neglect or default, *such as would, if death had not ensued, have entitled the person injured to maintain an action* for damages resulting from the injury * * *." The phrase underlined does not appear in the Death on the High Seas Act.

more was intended. Had the Congress wanted to limit recovery under the Act to negligence alone, it could have so indicated by using the word "negligence" as it did in the Federal Employers' Liability Act, 45 U.S.C. § 51, and, by reference, in the Jones Act, 46 U.S.C. § 688. The nature and scope of the duty to provide a seaworthy vessel and the extent of the warranty of seaworthiness have only recently been clearly defined, and I believe that the Death on the High Seas Act was intended to apply to all wrongful acts which from time to time would entitle the party damaged to maintain an action.[3]

■ I hold that the Death on the High Seas Act gives a remedy for breach of the warranty of seaworthiness and that the libelant may recover thereunder without proof of negligence or culpability.

■ On the issue of damages the statute provides: "The recovery * * * shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death * * *." 46 U.S.C. § 762.

The evidence showed that the decedent's average annual net earnings for a period of eight years were $5,500.00. While the decedent apparently kept only about $250.00 as pocket money, certain household expenses, such as food, mortgage payments, cost of heat, light, water, et cetera, are undoubtedly attributable to him. I find that the amount of expenses allocable to the decedent is $1,250.00.

An actuary testified that the decedent's life expectancy had been 33.7 years and that $19,309.00 was necessary to provide $1,000.00 annually at 3¾ per cent. To provide $4,000.00 annually, that portion of the decedent's annual income allocable to his wife and child, requires $77,236.00.

At the time of the accident the decedent's child was ten years old and had an expected dependency on her father of eleven years. The widow was considerably younger than the decedent and would be dependent upon him for the remaining period of his life, 33.7 years. I shall, therefore, allocate one quarter of the judgment to the child and three quarters, to the widow.

The parties have agreed on Count 2 that the fair amount of the funeral charges is $1,947.10.

Judgment may be entered for the libelant on Count 1 in the amount of $77,236.00 and on Count 2 in the amount of $1,947.10. The respondent's motion to dismiss Count 1 of the libel is denied.

---

3. In Middleton v. United Aircraft Corp., 204 F.Supp. 856 (D.C.S.D.N.Y.1960), the court held that a claim for an implied breach of warranty against the manufacturer of an airplane that had crashed would lie under the Death on the High Seas Act. The opposite result was reached in Noel v. United Aircraft Corp., 204 F.Supp. 929 (D.C.Del.1962), not on the ground that a breach of an implied warranty is not a "wrongful act, neglect or default" but on the ground that it is not a cause of action maintainable in admiralty.