Ruth **MONTGOMERY**, as Executrix of the Estate of Orion V. Montgomery, deceased, et al., Libellants,

v.

The **GOODYEAR TIRE & RUBBER COMPANY**, Goodyear Aircraft Corporation and Edwards Company, Inc., Respondents.

Catherine R. **COUTU**, as Administratrix ad Prosequendum of the goods, chattels and credits which were of Leo Joseph Coutu, deceased, late of Ocean County, et al., Libellants,

v.

**GOODYEAR AIRCRAFT CORPORATION** and Edwards Company, Inc., Respondents.

United States District Court
S. D. New York.
May 28, 1964.

Harry H. Lipsig, New York City, for libellants; Murray L. Lewis, New York City, of counsel.

Cahill, Gordon, Reindel & Ohl, New York City, for respondent Goodyear Aircraft Corp.; Paul W. Williams, H. Richard Schumacher, Robert F. Martin, New York City, William A. Runyan, Akron, Ohio, of counsel.

Perrell, Nielsen & Stephens, New York City, for respondent Edwards Co.; Joseph A. Minch, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for respondent Goodyear Tire & Rubber Co.; John J. Martin, New York City, of counsel.

COOPER, District Judge.

This is a motion for summary judgment pursuant to Rule 58(b) of the Rules of Practice in Admiralty and Maritime Cases, 28 U.S.C.,[1] brought by respondents Goodyear Aircraft Corporation and Edwards Company, Incorporated. Libellants Montgomery, Coutu and others commenced this action in admiralty to recover for the wrongful death of servicemen on active duty aboard a United States Naval airship which crashed 16 to 18 miles off the coast of New Jersey on July 6, 1960.

Respondent Goodyear manufactured the airship involved in the crash under a contract with the United States Government dated November 21, 1955. Edwards manufactured the electrical warning bell device built into the airship.

The dirigible was completed on September 24, 1959 and turned over to the Navy at Lakehurst, New Jersey. Approximately nine months later and after 363.4 hours of flight, it crashed into the Atlantic Ocean. All lives aboard were lost.

Libellants allege negligence in the manufacture of the ship on the part of Goodyear due to improper seaming of the balloon and against Edwards for manufacture of a faulty warning system which did not sound when the balloon began to lose air. These negligence claims are brought under the Death on the High Seas Act, 41 Stat. 537 (1920), 46 U.S.C. § 761 et seq. (1958).

In addition, libellants allege a breach of implied warranties of fitness and merchantability under the Act as well as a survival of their decedents' actions for conscious pain and suffering.

██ For the purposes of this motion, the pleaded facts are considered true.

---

1. A party against whom a claim * * * is asserted * * * may, at any time, move * * * for a summary judgment in his favor as to all or any part thereof.

(Admiralty Rule 58 is identical to F.R. Civ.P. § 56). Accordingly, we assume that the balloon crashed when its defectively manufactured seams split, and that the servicemen aboard the dirigible were not warned of the escaping gas because of a faulty alarm system.

Nonetheless, respondents seek dismissal of the action, alleging that public policy considerations governing contracts between the United States Government and weapons suppliers preclude suits by injured or deceased servicemen against the supplier. They argue that in order to keep ahead in the armaments race in these perilous times, sacrifice must be made of some elements of safety on newly developed weapons systems.

It is alleged by respondents that the ZPG–3W airship in question was of advanced design, and therefore necessarily deficient in certain safety factors common to commercial aircraft; that in order to remain at the frontiers of the art of weaponry, system failures due to this necessary skimping must be expected. Allowing lawsuits based upon these failures, it is claimed, would work a hardship on the manufacturers and on Government personnel involved in designing, maintaining and operating these ships.

Moreover, say the respondents, the amount of time necessary for production of advanced weapons often exceeds the time within which the equipment must be in the hands of military personnel to prevent obsolescence; that identification of all safety problems in airships often cannot be completed; that the essential problem demanding speedy solution is unlike the situation of the ordinary manufacturer who has time to subject his product to extensive testing before distribution.

The Court is impressed by the sensitive questions of national defense raised here and the important role played by these advance weapons systems in protecting the nation. We recognize that in some cases, certain safety factors must be disregarded in order to explore new possibilities in weaponry. Similarly, it may be true that complete knowledge of all possible safety problems cannot be obtained because of the speed with which these weapons must be completed.

In response, libellants concede that certain safety factors must be sacrificed for experimentation in such weapons, but insist the number of safety factors lacking is not at issue here. Rather, they predicate their claim on the proposition that within the existing safety devices actually adopted on this airship, there was faulty manufacture. It is alleged, and for the purposes of this motion accepted as true, that the bolts used in the seams of the envelope were not correctly applied, thereby causing them to open. This has no bearing on the inclusion or exclusion of safety devices.

■ For the purposes of this motion, the Court accepts libellants' characterization of negligence as occurring within the safety factors existing in the ship. While libellants may not rely on any devices or materials intentionally omitted from this ship in order to prove a breach of the standard of care owed by a weapons manufacturer to those using his products, they may attempt to prove that even within the limited standard of safety demanded of this manufacturer, the fabrication of the balloon was negligently executed.

■ The speed with which an airship must be completed to prevent obsolescence is no license for defective work. Speculation over the adequacy of time consumed in the manufacture of this balloon, November 21, 1955 to September 24, 1959, will accomplish nothing.

Under perilous circumstances, men are expected to go forward at all hazards despite the total absence of safety devices; a piece of rope must serve in the stead of efficient mechanical equipment; a stone moved into place where expert masonry appears the only efficient answer. Fortunately, we are not confronted here with challenges so awesome.

■ Turning now to policy questions governing the actions in warranty and negligence, it is alleged that Government procurement of weapons is so unlike the ordinary contract and sale of a product as to disallow ordinary negligence and warranty considerations. Government, unlike the ordinary consumer, is allegedly in a position to dictate terms of manufacture. This distinction, however true, does not warrant summary judgment. The Court will not dismiss an action simply because it does not completely fit into any accepted mold of warranty or negligence claims. We choose to examine the particular facts upon which the claim rests and so determine whether there was in truth a breach of implied warranty or negligent manufacture. Unless compelling reasons are advanced and adopted, this cause of action should not be stricken at the threshold of its assertion.

Movants also seek summary judgment on the ground that, as a matter of law, their negligence could not have been the proximate cause of the crash. It is said that the Government exercised almost complete control over the manufacture of the airship in question, thereby precluding any meaningful control by Goodyear; that the ship was built according to Government specifications and under its inspection; that it was then delivered to the United States Navy which took complete control of it approximately nine months before the crash.

■ Of course the Government had control of the airship once it was finished. But the negligence which is claimed here occurred at an earlier stage. If we are to accept the alleged facts as true, and we do for purposes of this motion, the negligent acts took place at Goodyear's plant during the manufacture of the airship and not when the Navy accepted it. Accordingly, control upon delivery of the balloon does not preclude a finding of negligence on the part of either Goodyear or Edwards.

■ The extent of Government control over the actual day-to-day manufacturing process is not clear. Did Government personnel prepare the seams of the ship? Did Government direct, either by contract or through inspectors, the exact method to be used to seal the seams? These are material questions for the trier of fact to determine before the proximate cause is known. This alone thwarts summary judgment.

Next, respondents assert the defense of assumption of risk on the part of the servicemen as a bar to this action. Libellants' decedents were Navy servicemen who had volunteered for flight duty not required of all Navy personnel, and they received higher compensation to perform this duty. These facts, respondents argue, show an assumption of risk on their part.

■ In order to assume a risk, there must be an awareness of danger and a voluntary choice to encounter the hazards which that danger might bring. This defense requires "knowledge and appreciation of the risk, and a voluntary choice to encounter it." Prosser on Torts 303 (2d ed. 1955).

■ The decedents volunteered to fly. Other than this, we do not know what it was they assumed. What were they told about their airship? When they decided and volunteered to fly, were they told they would fly aircraft in which safety factors were limited? And if they knew this was an advanced design airship, were they made aware of a possible break in the seams? An unknown hazard cannot be assumed.

The state of decedents' knowledge is a material question of fact which must be explored at trial. Montellier v. United States, 202 F.Supp. 384 (S.D.N.Y.1962), aff'd, 315 F.2d 180 (2d Cir. 1963). Accordingly, that portion of the motion relying on the affirmative defense of assumption of risk as a matter of law must be denied.

Respondents attack the action for conscious pain and suffering on the ground that the statute upon which libellants rely provides only an action for wrongful death, and not for the survival of an

action belonging to the decedent at his death. They say that the Death on the High Seas Act is exclusive in this regard.

We find no provision for survival of other actions under the Death on the High Seas Act. Petition of Gulf Oil Corp., 172 F.Supp. 911 (S.D.N.Y.1959); Williams v. Moran, Proctor, Mueser & Rutledge, 205 F.Supp. 208 (S.D.N.Y. 1962); Abbott v. United States, 207 F. Supp. 468 (S.D.N.Y.1962). The Act is limited to "pecuniary loss sustained by the persons for whose benefit the suit is brought." 46 U.S.C. § 762.

■ Nonetheless, as was pointed out in Petition of Gulf Oil Corp., supra, state remedies for conscious pain and suffering survive in admiralty. In noting the application of state law to maritime causes of action, Justice Frankfurter in Romero v. International Term. Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), stated:

"State remedies for wrongful death and state statutes providing for the survival of actions, both historically absent from the relief offered by the admiralty, have been upheld when applied to maritime causes of action. Federal courts have enforced these statutes." 358 U.S. at 373, 79 S.Ct. at 480.

■ The Death on the High Seas Act has preempted only actions for wrongful death. A second theory of liability for damages caused to the injured person himself was left open by the Act, but its silence is no reason to reject an otherwise valid action surviving under state law. The courts have consistently allowed survival actions for pain and suffering as a matter of state law under the Act. Petition of Gulf Oil Corp., supra; Williams v. Moran, Proctor, Mueser & Rutledge, supra; Abbott v. United States, supra. See also The Hamilton, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264 (1907).

Libellants suggest that under Petition of Gulf Oil Corp., supra, the appropriate state law governing the survival action for pain and suffering is that of the forum. However, the cases agree that in an admiralty court, the survival statute of the tortfeasor's state controls. Petition of Gulf Oil Corp., supra; Williams v. Moran, Proctor, Mueser & Rutledge, supra; Abbott v. United States, supra; McLaughlin v. Blidberg Rothchild Co., 167 F.Supp. 714 (S.D.N.Y. 1958); The James McGee, 300 Fed. 93 (S.D.N.Y.1924).

■ Goodyear Aircraft Corporation is a Delaware corporation and Edwards Company was incorporated in Connecticut. The liability of each for pain and suffering depends on the laws of its domicile, for as was pointed out by Judge Learned Hand in The James McGee, supra:

"There is no reason why a sovereign should not undertake to impose on persons domiciled within its borders obligations conditioned on events occurring on the seas, since there is no other sovereign with whom its will conflicts. Therefore the question comes merely to whether the sovereign of the domicile has clearly enough indicated such a purpose. If so, there is as much reason why the court of another sovereign before whom the case arises should recognize those obligations, and impose similar ones, as though the events in question had arisen within the borders of the sovereign of the domicile." 300 Fed. at 96.

We find that this type of action for pain and suffering is countenanced by the laws of Delaware and Connecticut. Del.Code Ann. tit. 10, § 3701 (1953); Conn.Gen.Stat.Ann. § 52–599 (1960). Accordingly, the Court denies this aspect of the motion.

Finally respondents claim there can be no action against a supplier for breach of implied warranty in an admiralty court. Two separate questions are raised here: 1) Does the law of admiralty recognize an action for personal injuries and death against a supplier based on breach of implied warranty? 2) If the action is recognized, is privity of contract a necessary requisite of it?

The courts do not agree on the place of a breach of implied warranty action in an admiralty court. In Noel v. United Aircraft Corp., 204 F.Supp. 929 (D.Del. 1962), an action under the Death on the High Seas Act, libellants moved to amend their libel to include a cause of action based on breach of implied warranty against the manufacturer of the propellers used on the airplane which crashed. The court denied the motion on the ground that as a matter of law and policy, admiralty will not recognize breach of warranty as a cause of action, regardless of the existence of privity of contract.

In direct opposition is Middlleton v. United Aircraft Corp., 204 F.Supp. 856 (S.D.N.Y.1960). Here an action in implied warranty was allowed under the Death on the High Seas Act. The court pointed to § 1 of the Act which states that it is applicable "[w]henever the death of a person shall be caused by wrongful act, neglect, or default * *." 46 U.S.C. § 761. This was held to include breach of implied warranty.

■■■ Section 1 of the Death on the High Seas Act does not encompass negligence alone, for a breach of warranty is as much a breach of duty as is a negligent act. McLaughlin v. Blidberg Rothchild Co., supra; Skovgaard v. The M/V Tungus, 252 F.2d 14 (3d Cir. 1957), aff'd, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed. 2d 524 (1959) interpreting the same language in the New Jersey Wrongful Death Act; Chermesino v. Vessel Judith Lee Rose, Inc., 211 F.Supp. 36 (D.Mass. 1962), aff'd, 317 F.2d 927 (1st Cir. 1963).

Most recently, admiralty's recognition of warranty actions was considered in Weinstein v. Eastern Airlines, 316 F.2d 758 (3d Cir.), cert. den., 375 U.S. 940, 84 S.Ct. 343, 11 L.Ed.2d 271 (1963). In that case, a land-based airplane crashed within the territorial waters of a state. Libellants sued the manufacturer of the plane, Lockheed Aircraft Corporation and the manufacturer of the power plant, General Motors, for breach of implied warranties of fitness and merchantability. In regard to the warranty action, the court stated the test for recognition of the action in admiralty to be the traditional requisites of an admiralty contract—was this "an obligation maritime in its nature, for the performance of maritime service or transactions"? 316 F.2d at 766.

The contracts there in question did not meet this test because they grew out of transactions covering the manufacture of a land-based aircraft and carriage by air between two cities on the mainland. The fact that the crash took place over water was incidental in this context.

■■■ However, the court left open the question of admiralty's recognition of a contract dealing with a plane whose route was primarily over water. (See note 22, p. 766). We believe that the dirigible involved here is covered by that exception. Its manufacture was for the Navy, and it was intended for use primarily over water. Given these facts, it was more likely than not that a crash would take place over water, and so within admiralty jurisdiction.

■■■ However, the warranty claim in question, characterized as an action in contract, attaches to the contract between Goodyear and Government calling for the manufacture of the airship. It is a well recognized principle of admiralty law that a contract to build a ship is not, in and of itself, a maritime contract. Edwards v. Elliott, 88 U.S. (21 Wall.) 532, 554, 22 L.Ed. 487 (1874); The Winnebago, 205 U.S. 354, 363, 27 S.Ct. 509, 51 L.Ed. 836 (1907); Gilmore and Black, The Law of Admiralty 15, 25, 535 (1957).

Despite this principle, recent developments in the Supreme Court indicate a broadening of the scope of implied warranties in admiralty cases. In Italia Societa, etc. v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), the Court held that a stevedore company breached its implied warranty of workmanlike service by supplying a defective rope even though there was a finding that the stevedore had not been negligent. A kind of strict lia-

bility in warranty was imposed on the stevedore.

In reaching this result, the Court pointed to two of its earlier decisions, Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), and stated:

> "This undertaking is the stevedore's 'warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product,' a warranty generally deemed to cover defects not attributable to a manufacturer's negligence." 376 U.S. at 318–319, 84 S.Ct. at 751.

On several occasions, the absolute liability imposed under an implied warranty of workmanlike service has been analogized by the Supreme Court to the supplier's warranty of the fitness of his product. Italia Societa, etc. v. Oregon Stevedoring Co., supra; Crumady v. The J. H. Fisser, supra; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra. It is then a short step to directly recognize implied warranties in admiralty actions, especially when the warranties cover an airship intended for flight over water and sold to the United States Navy.

A second parallel of the two types of implied warranty actions makes it requisite that they be treated similarly by admiralty courts. The theory underlying the imposition of an implied warranty of workmanlike service is an attempt to allocate losses to the enterprise most capable of minimizing the risk. Italia Societa, etc. v. Oregon Stevedoring Co., supra; DeGioia v. United States Lines Co., 304 F.2d 421 (2d Cir. 1962); Ferrigno v. Ocean Transport Ltd., 309 F.2d 445 (2d Cir. 1962).

The same theory underlies breach of implied warranties in a suit against the manufacturer of an airship. If the defect in the ship was due to faulty manufacture, and it was a latent defect, the maker is clearly in a better position than the purchaser of the ship to prevent or remedy it. Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y. S.2d 592, 191 N.E.2d 81 (1963); Greenman v. Yuba Power Prods., Inc., 59 Cal. 2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963).[2]

Moreover, the recent trend in personal injury and death cases based on warranty has been to treat the action as one in the nature of tort, ignoring contract considerations.[3] Middlleton v. United Aircraft Corp., supra; George v. Douglas Aircraft Co., Inc., 332 F.2d 73 (2d Cir. 1964); Goldberg v. Kollsman Instrument Corp., supra.

■■ If considered tort, admiralty clearly has jurisdiction. The sole test for recognition of a maritime tort is whether the injury occurred over navigable waters. Weinstein v. Eastern Airlines, supra; The Plymouth, 70 U.S. (3 Wall.) 20, 36, 18 L.Ed. 125 (1865); State Industrial Comm. of State of New York v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933 (1922). The crash in question occurred 16 to 18 miles off the coast of New Jersey, clearly within admiralty jurisdiction.

■■ Accordingly, we agree with the decision in Middlleton v. United Aircraft Corp., supra, that an action based on breach of implied warranty will lie under the Death on the High Seas Act. If libellants can make out an action in warranty, there is no logical reason to dismiss it merely because the airship crashed into water rather than onto land.

---

2. For a comprehensive discussion of the most recent warranty decisions and the theories underlying imposition of strict liability, see King and Wexler, Commercial Law, 1963 Ann.Survey Am.L. 319.

3. The New York Court of Appeals now terms an action in implied warranty of this nature "a tortious wrong." Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d at 436, 240 N.Y.S.2d 592, 191 N.E.2d 81. Courts are coming to recognize that an action against a manufacturer based on an implied warranty may be neither contract nor tort, but a separate claim altogether.

■ The second question raised concerns the need for privity of contract. Again we turn to Middlleton v. United Aircraft Corp., supra, which holds that in an action for breach of implied warranty under the Death on the High Seas Act, privity is no longer necessary. Noel v. United Aircraft Corp., supra, while disallowing such a claim, recognizes that privity of contract is not controlling in death cases. Numerous other cases have found lack of privity to be no defense in an action for personal injuries or death. Siegel v. Braniff Airways, Inc., 204 F. Supp. 861 (S.D.N.Y.1960); Conlon v. Republic Aviation Corp., 204 F.Supp. 865 (S.D.N.Y.1960); Hinton v. Republic Aviation Corp., 180 F.Supp. 31 (S.D. N.Y.1959). See also Prosser, Assault Upon the Citadel, 69 Yale L.J. 1099 (1960).

Having resolved that an action based on breach of implied warranty will lie in admiralty, we are then asked by Edwards, as manufacturer of a component part of the airship, to dismiss the warranty action against it following Goldberg v. Kollsman Instrument Corp., supra.

In that major decision by the New York Court of Appeals, an action for wrongful death based upon a breach of an implied warranty was allowed against Lockheed Aircraft Corporation, manufacturer of the airplane which crashed, killing plaintiff's decedent. Plaintiff alleged a similar cause of action against the manufacturer of the altimeter in the airplane, Kollsman Instrument Corporation. As with the question of Lockheed's liability, the action against the altimeter manufacturer raised a question of first impression.

The court dismissed this action stating:

"However, for the present at least we do not think it necessary so to extend this rule as to hold liable the manufacturer (defendant Kolls-man) of a component part. Adequate protection is provided for the passengers by casting in liability the airplane manufacturer which put into the market the completed aircraft." 12 N.Y.2d at 437, 240 N.Y.S.2d at 595, 191 N.E.2d at 83.

■ This Court, sitting in admiralty, is not bound by that determination. However, the similarity of facts in Kollsman and in the case at bar is so overwhelming that the reasoning of the case should be applied here. Goodyear and Edwards fit the standard there pronounced and we feel impelled to follow it.[4]

The cause of action in warranty against Edwards is dismissed, but the actions against that corporation in negligence for wrongful death and for pain and suffering will stand. With this one exception, respondents' motion for summary judgment is denied.

Libellants make two cross-motions in these proceedings, one to examine Goodyear to determine whether there is insurance covering the crash, and the other, to examine Goodyear employees to determine the extent of control exercised by Government over the manufacture of the airship. These motions became moot: the first upon Goodyear's production of all applicable insurance policies; the second by our decision here. However, since the extent of Government control over Goodyear employees bears on the question of proximate cause which remains to be determined at trial, we assume that libellants will pursue this examination in the prompt course of discovery proceedings.

The motion for summary judgment is denied in all respects, except as to the cause of action in warranty against Edwards. To the extent of that exception only, the motion is granted.

This is to be considered an order. No settlement thereof is necessary.

So ordered.

---

4. For a discussion of the theory underlying Goldberg v. Kollsman Instrument Corp., see King and Wexler, Ann.Survey Am.L., supra.