In the Matter of the Petition of ALAMO CHEMICAL TRANSPORTATION CO., as the Owner of the STEEL TANK BARGE SUN CHEM 100 in a Cause of Exoneration From or Limitation of Liability.

Linn R. KIRKALDY, Surviving Widow of Richard Kirkaldy, Deceased

v.

ALAMO CHEMICAL TRANSPORTATION CO., Celanese Chemical Co., Scott Electric and Coppus Engineering Corporation.

Civ. A. Nos. 68–C–138, 69–C–181.

United States District Court,
S. D. Texas,
Corpus Christi Division.
April 23, 1970.

James E. Ross, Ross, Griggs & Harrison, Houston, Tex., Emmett Cole, Victoria, Tex., Lee Mahoney, Mahoney, Shaffer, Hatch & Layton, W. N. Woolsey, Lewright, Dyer & Redford, R. W. Woolsey, Kleberg, Mobley, Lockett & Weil, Corpus Christi, Tex., for plaintiff.

Yancey White, Allison, Maddin & White, Richard Stone, Corpus Christi, Tex., for defendants.

## MEMORANDUM AND ORDER

SEALS, District Judge.

These cases are presently before the court upon (1) the motions of Coppus Engineering Corporation, a defendant in C.A. 69–C–181 and a third-party defendant in C.A. 68–C–138, to dismiss it from these proceedings because no admiralty cause of action is stated against it and (2) the motion of plaintiff in C.A. 69–C–181 to consolidate the two actions.

The cases represent a series of consolidated actions brought by reason of the explosion of a barge, the "Sun Chem 100," in the Port of Corpus Christi, Texas on or about October 4, 1968. The explosion resulted in the death of one man, Richard Kirkaldy, and the injury of another, Kerry Claude. The explosion also damaged the barge and possibly other structures in the vicinity. It is alleged in each case that the explosion was caused by sparks emitted from electrically powered air-moving equipment manufactured by Coppus Engineering Corp.

In case number C.A. 68–C–138, a suit brought by the owner of the barge for exoneration from or limitation of liability, defendant Rincon Shipyard, Inc., in a third-party action against Coppus, alleges:

Defendant Coppus Engineering Corporation was at all times material hereto in the business of engineering and selling air moving equipment. Coppus Engineering sold to this Third Party plaintiff, Rincon Shipyard, Inc., electrical blowers which they represented and warranted as being explosion proof and designed specifically for use in gas freeing of hot barges. The Third Party Plaintiff alleges that

as a result of their breach of warranty and failure to supply this Third Party Plaintiff with properly designed blowers that this Plaintiff is therefore entitled to indemnity from the Coppus Engineering Corporation in the event that said third Party Plaintiff is found liable to any of the causes of action heretofore asserted against it. * * *

In the other case, C.A. 69–C–181, a death action filed by the representatives of Richard Kirkaldy, dec., plaintiff specifically alleges:

That the Defendant, Coppus Engineering Corporation, was, at all times material hereto, in the business of designing, engineering, manufacturing and selling electrical blowers. At a time unknown to the plaintiff Bill Miller, the manager of Rincon Ship Yard, Inc. ordered from the defendant Coppus Engineering Corporation two (2) electrical blowers to be designed, engineered and manufactured in such a manner as to be suitable for use in gas freeing barges which contained highly combustible gases. At the time the order for these blowers was placed with the defendant, Coppus Engineering Corporation, they were informed of the use to which these blowers were to be put. That as a result of the negligence of the defendant in its designing and/or engineering and/or manufacturing of one of these electrical blowers, said electrical blower was caused to emit sparks which did, in fact, ignite the combustible gases in the "Sun Chem 100" on or about the 4th day of October, 1968 and the resulting explosion did cause the death of the plaintiff's husband, Richard Kirkaldy. The defendant Coppus Engineering Corporation breached its implied warranty that said electrical blower was suitable and fit for the use for which it was intended and as a result of this breach of its implied warranty the combustible gases in the "Sun Chem 100" were ignited and caused to explode and the resulting explosion caused the death of the plaintiff's husband, Richard Kirkaldy.

The plaintiff in 69–C–181 also alleges that Richard Kirkaldy's death was caused by:

the negligence of one or more of the defendants, their agents, servants and employees * * * and/or the negligence of the defendants, their agents, servants and employees, in permitting or causing by their negligence, the "Sun Chem 100" to become unseaworthy. The negligence of the defendants and the unseaworthiness of the "Sun Chem 100" were the proximate cause of the death of plaintiff's deceased husband.

Presumably the available theories of recovery against Coppus would be limited to (1) a cause of action based upon an express contract or (2) a products liability action founded upon either negligence or strict liability.

■ No admiralty or maritime claim is stated herein insofar as either claim asserted against Coppus is founded upon an express warranty or contractual undertaking. A contract concerning the manufacturing and supplying by Coppus of the air moving equipment allegedly involved herein would not be of the type that would confer admiralty jurisdiction on this court. See generally, Robinson on Admiralty, 162–186; 1 Benedict on Admiralty, 123–148; Gilmore & Black, The Law of Admiralty (1957) 20–28. Such a contract would appear to have reference to neither maritime service nor maritime transactions. See New England Mut. Marine Ins. Co. v. Dunham, 11 Wall. 1, 20 L.Ed. 90 (1870). The fans, purchased by and for the use of Rincon Ship Yard, did not become part of the ship's supplies or equipment [see, The Mountaineer v. Holfhill Packing Corp., 286 F. 913 (9th Cir. 1923); The Hiram R. Dixon, 33 F. 297 (D.C.N.Y.1887); The Pinthis, 286 F. 122, 123 (3rd Cir. 1923)]. Nor does it appear that the alleged contract related to the services to be performed in the repair or

maintenance of the barge (see, Robinson, *supra;* Benedict, *supra;* Gilmore & Black, *supra*). The maritime connections present were too attentuated and insubstantial to serve as a sufficient basis of admiralty jurisdiction over such a contract.

■ Although unknown to admiralty until relatively recent times, a products liability action predicated upon the manufacturer's negligence undoubtedly will now lie in admiralty. See, *e. g.,* Schaeffer v. Michigan-Ohio Navigation Co., 416 F.2d 217 (6th Cir. 1969); Noel v. United Aircraft Corp., 342 F.2d 232 (3rd Cir. 1965); Sieracki v. Seas Shipping Co., 149 F.2d 98 (3rd Cir. 1945), aff'd, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

■ Thus, a manufacturer who fails to exercise reasonable care in the manufacture of a product which, unless carefully made, the manufacturer should recognize will involve an unreasonable risk of causing substantial physical injury to those who use the product for its intended purpose and to those whom the manufacturer should expect to be in the area of probable use, now may be sued in admiralty for physical injuries caused such persons during the product's use in a manner and purpose for which it was manufactured. Sieracki v. Seas Shipping Co., *supra,* 149 F.2d at 100.

■■ Where, as in a products liability action founded upon a theory of negligence, an action sounds in tort, the locale of the occurrence is jurisdictionally dispositive. See, *e. g.,* Hastings v. Mann, 340 F.2d 910 (4th Cir.), cert. den., 380 U.S. 963, 85 S.Ct. 1106, 14 L. Ed.2d 153 (1965). The injuries and damages made the basis of this suit arose out of an event that undisputably occurred on waters within the admiralty jurisdiction of this court. Thus, insofar as either cause of action against Coppus is based on negligent manufacture, design, etc., the admiralty jurisdiction of this court has been properly invoked.

■ The plaintiff in 69–C–181 alleges negligence on the part of defendants generally and also alleges specifically that the death of her husband resulted from defendant Coppus' negligent designing, engineering or manufacturing of the electrical blowers. These allegations suffice to state as against Coppus an admiralty products liability action founded upon negligence.

Rincon Ship Yard, Inc., in its third party action in 68–C–138 against Coppus, alleges that, in *addition to its* breach of certain warranties, Coppus' "failure to supply this Third Party Plaintiff with properly designed blowers" entitles Rincon to indemnification in case of its being found liable. This is the only language which could possibly be construed to be an assertion by Rincon of a cause of action against Coppus based on negligence. Although this inference may be drawn, it is by no means required. The term "failure" could be used instead to mean a "willful" failure, or simply a breach of contract. Rincon's pleading in this respect is too indefinite and unclear to permit or support a conclusion that Rincon states a cause of action for negligent design.

The question remains whether a cause of action may be stated in this admiralty suit upon the theory of strict products liability. Certainly no maritime rule of law provided for such an action when, through the Constitution, the law of maritime was incorporated into the laws of the United States. However, ample authority exists for admiralty to incorporate such a concept into its laws, provided the action has been sufficiently well-established in the common law of the land. See, Sieracki v. Seas Shipping Co., 149 F.2d 98, 99–100 (3rd Cir. 1945), aff'd, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

> Maritime law draws on many sources; when there are no clear precedents in the law of the sea, admiralty judges often look to the law prevailing on the land. If the law prevailing on the land recognized such a claim uniformly or nearly so, a United States admiralty court would approach the prob-

lem hereby asking itself why it should not likewise do so. Littlehale v. E. I. du Pont de Nemours & Co., 268 F. Supp. 791, 797 (S.D.N.Y.1966) (citations omitted).

Looking to the common law of the land, it is apparent that a products liability action founded upon strict liability has gained wide recognition and acceptance.

> The rapid advance of the doctrine of strict liability in products cases is without parallel in the history of the law. Dean Prosser dates the beginning of this advance as the famous case of Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960). "What has followed has been the most rapid and altogether spectacular overturn of an established rule in the entire history of the law of torts."

> The number of jurisdictions that have followed the New Jersey Supreme Court's lead is difficult to determine. In 1966 Prosser was able to list 18 that had imposed a rule of strict liability without privity and without negligence, on manufacturers of all products—Arizona, California, Connecticut, the District of Columbia, Florida, Illinois, Iowa, Kentucky, Michigan, Minnesota, Missouri, New Jersey, New York, North Dakota, Ohio, Oregon, Tennessee and Washington. Since that time, at least six more states have followed suit—Alaska, Mississippi, Nevada, Pennsylvania, Texas and Wisconsin.

Strict Liability in Federal Courts: Problems of Predicting State Law Under Erie, 55 Cornell L.Rev. 274 n. 4 (1969) (citations omitted). *See also*, 2 Furmer & Friedman, Products Liability §§ 16–16B (1967); Jaeger, How Strict is the Manufacturer's Liability? Recent Developments, 48 Marq.L.Rev. 293 (1965); Keeton, Products Liability— Liability Without Fault and the Requirement of a Defect, 41 Tex.L.Rev. 855 (1963); Traynor, The Ways and Means of Defective Products and Strict Liability, 32 Tenn.L.Rev. 363 (1965). The common-law strict products liability action, in its various forms, seemingly has become sufficiently well-established to justify its being incorporated into the law of admiralty, if to do so would serve admiralty's present-day needs.

Even if it is determined that admiralty has embraced, or should now embrace, the strict products liability action, this would not wholly resolve the question of whether such an action is available in the context of the present case. Due to the differences in the admiralty jurisdictional tests traditionally employed in cases of contract and tort, the underlying nature, or basis, of any such action found to exist in admiralty also must be examined. Should the strict products liability action sound primarily in contract, so as presumably to make the principles of contract applicable for jurisdictional as well as substantive purposes, then no such cause of action could be asserted herein against Coppus. As was noted earlier, in cases of contract admiralty jurisdiction depends upon the admiralty nature of the contractual undertaking, and, in the present case, any such contractual undertaking, express or implied, that may be alleged clearly would be of a non-maritime nature. If however, it is determined that (1) a cause of action in strict products liability may be asserted in admiralty and (2) the basis of that action sufficiently sounds in tort so as to make the principles of tort applicable for jurisdictional purposes, then the allegations against Coppus in 69–C–181, and possibly the allegations against Coppus in 68–C–138, would state a cause of action in admiralty. "The sole test for recognition of a maritime tort is whether the injury occurred over navigable waters." Montgomery v. Goodyear Tire & Rubber Co., 231 F.Supp. 447, 454 (S.D.N.Y.1964). See also, Weinstein v. Eastern Airlines, 316 F.2d 758 (3d Cir. 1963); The Plymouth, 3 Wall. 20, 70 U.S. 20, 36, 18 L.Ed. 125 (1865). And, as stated previously, the injuries and damages of the present suit allegedly were incurred as a result

of an explosion which occurred upon waters within the maritime tort jurisdiction of this court.

Strict products liability was initially imposed upon a theory of "warranty," a concept which was considered to be primarily contract in nature, arising from the failure of a product to meet the express or implied representations of its manufacturer. See, 2 Frumer and Friedman, § 16 at 3, 4, 173. But it seems clear that the strict products liability action, even when defined in terms of implied warranties, also sounded in tort, as well as contract. Characterizing the warranty action as "a freak hybrid born of the illicit intercourse of tort and contract," Prosser has stated that the warranty action, as a means of imposing liability without a contract, has had at least the "superficial justification" that it "had always been recognized as bearing to some extent the aspects of a tort." Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791, 800 (1966).

Because "warranty" had become so closely identified with a contract between the litigants, courts, in the earlier cases, mechanistically applied the traditional principles of contract—*e. g.* requiring reliance upon a representation, requiring plaintiff to give notice of a breach within a reasonable time, and subjecting the warranty to disclaimer. See Prosser, The Assault Upon the Citadel, 69 Yale L.J. 1099 (1960) and the cases cited therein.

Warranty, as a theoretical basis upon which to impose strict liability drew increasing criticism. Legal writers questioned the utility and logic of the circuitous thinking and fictions often required in using "warranty" solely to provide a strict products liability action and to avoid problems associated with privity. See, *e. g.*, Gillan, Products Liability in a Nutshell, 37 Ore.L.Rev. 119 (1957); Prosser, *supra.*

Prosser has stated:

[T]he suggestion was sufficiently obvious that all the trouble lay with the one word "warranty", which had been from the outset only a rather transparent device to accomplish the desired result of strict liability. No one disputed that the "warranty" was a matter of strict liability. No one denied that where there was no privity, liability to the consumer could not sound in contract and must be a matter of tort. Why not, then, talk of the strict liability in tort, a thing familiar enough in the law of animals, abnormally dangerous activities, nuisance, workmen's compensation, libel, misrepresentation, and respondeat superior, and discord the word "warranty" with all its contract implications?

The California Supreme Court in Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962) was first to discard the "warranty" rationale and to declare the strict products liability action as sounding solely in tort. The California court reaffirmed its position in Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964). Following the lead of *Greenman,* other courts have been quick to cast aside warranty and to speak in terms of tort. See, *e. g.*, Putman v. Erie City Manufacturing Co., 338 F.2d 911 (5th Cir. 1964); Delaney v. Towmotor Corp., 339 F.2d 4 (2d Cir. 1964); Lartigue v. R. J. Reynolds Tobacco Co., 317 F.2d 19 (5th Cir. 1963). Although many courts still speak in terms of warranty, it is now clear that the action actually sounds in tort.

This recent development in the law of products liability was accepted and adopted in 1965 by the American Law Institute, Restatement of Torts, Second, § 402A (1965). And, not surprisingly, the imposition of strict products liability directly, on the basis of tort, has been universally endorsed by the legal writers. See, *e. g.*, note, Greenman v. Yuba Power Products, Inc., 15 Stan.L.Rev. 381 (1963); Lascher, Strict Products Liability in Tort for Defective Products—Vandermark, 38 S.Cal.L.Rev. 30, 59 (1965); Prosser, *supra,* note Admiral-

ty's Stepchild: Strict Tort Liability, 5 Willamette L.J. 481 (1969); Ehrenzweig, Liability Without Fault, Calif.L. Rev. 1422 (1966).

Although the strict products liability action has not been received with absolute unanimity in admiralty, the recently litigated decisions sufficiently preponderate in its favor so as to indicate that the action may now be asserted in admiralty. Many of the cases in which the action has been held to be available in admiralty have either considered the action to sound in tort, or have treated it so even though characterizing it in terms of warranty.

The first admiralty case to successfully imposed strict liability was Middleton v. United Aircraft Corp., 204 F.Supp. 856, 859 (S.D.N.Y.1960). In that case the court concluded that the DOHSA phrase "wrongful act, neglect or default" is broad enough to include the common-law action on a breach of an implied warranty.

The next case to consider the question, Noel v. United Aircraft Corp., 204 F.Supp. 929 (D.Del.1962) reached a contrary conclusion. In that case the court held that the "implied warranty of fitness and merchantability is a phenomenon of state sales law, and, as such, is unknown to the federal maritime law." Id. at 934. The Noel court declined to incorporate an action which it considered to be a drastically new concept which had not as yet even evolved into settled law in the state courts. Recognizing that "admiralty can grow and change by judicial decision to meet the needs of changing social and merchandising relationships," the court declared that "the role of the Courts in the process of change is not to revolutionize but to adjust." Id. at 939. It has been suggested that "[t]he Noel court's treatment of the privity issue * * * indictate[s] that it regarded libellant's claim not as one for breach of warranty sounding in contract but rather as an inarticulate allegation of strict liability." McCune, Maritime Products Liabiltiy, 18 Hast.L.J. 831, 861–62 (1967).

The Noel rationale was followed in Jennings v. Goodyear Aircraft Corp., 227 F.Supp. 246 (D.Del.1964), wherein the Delaware District Court again stated that a claim sounding in warranty could be asserted only in the state court under state law. The court indicated that tort and warranty claims must be distinguished, but declined to comment upon any tort claims that may have been present for the reason that the case had been improvidently removed from state court and the consequent lack of jurisdiction was decisive.

The same year of the Jennings decision, the New York District Court reaffirmed its Middleton decision in Montgomery v. Goodyear Tire & Rubber Co., 231 F.Supp. 447 (S.D.N.Y.1964). The court made the following comment:

On several occasions, the absolute liability imposed under the implied warranty of workmanlike service has been analogized by the Supreme Court to the supplier's warranty of the fitness of his product. It is then a short step to directly recognize implied warranties in admiralty actions, especially when the warranties cover an airship intended for flight over waters and sold to the United States Navy.

Id. at 454.

The court observed that "the recent trend in personal injury and death cases based on warranty has been to treat the action as one in the nature of tort, ignoring the contract considerations." Id. at 454. The court then suggested that "an action against a manufacturer based on an implied warranty may be neither contract nor tort, but a separate claim altogether." Id. at n. 3.

Declaring that "[t]here is no logical reason to which justifies the position that implied warranties are not and should not be recognized in admiralty," the court in Sevits v. McKiernan-Terry Corp., 264 F.Supp. 810, 814 (S.D.N.Y. 1966), rejected Noel and held that implied warranties of fitness and merchantability are recognized in admiralty for injuries sustained in a maritime

tort, and run against a component part manufacturer. The court commented that "warranties are no longer exclusively within the realm of contracts, but have taken on tortious overtones." *Id.* at 813.

In Weinstein v. Eastern Airways, Inc., 316 F.2d 758 (3d Cir.), cert. den., 375 U.S. 940, 84 S.Ct. 343, 11 L.Ed.2d 271 (1963), a wrongful death action arising out of a crash of an aircraft in navigable waters, the court held "that contracts and warranties referring to the entire portion of the flight of a land-based aircraft from one mainland city to another are not justiciable in admiralty notwithstanding the fact that their breach is alleged as the result of a crash into navigable waters traversed as a segment of a primarily over-land flight." *Id.* at 766. Clearly, if the nexus between admiralty and the contract upon which the suit was based had been sufficiently substantial, the *Weinstein* court would have held proper such a products liability suit in admiralty. It was not the products liability nature of the suit that presented a jurisdictional problem to the *Weinstein* court; rather, it was the non-admiralty nature of the contractual basis of the particular products liability action.

Citing *Weinstein, supra,* and *Montgomery,* the New York District Court, in Littlehale v. E. I. du Pont de Nemours & Co., 268 F.Supp. 791 (S.D.N.Y.1966); aff'd., 2 Cir., 380 F.2d 274, made the surprising statement, in view of its prior decisions, that "[i]f the action were for breach of implied warranty, the test for recognition of the action in admiralty would be the traditional requisites of an admiralty contract, i. e., was it an obligation maritime in its nature, for the performance of maritime services or transactions." *Id.* at 797, n. 9.

In the recent decision of Soileau v. Nicklos Drilling Co., 302 F.Supp. 119 (W.D.La.1969), the Louisiana District Court followed *Middleton* and its progeny and held that the Death on the High Seas Act encompasses an action for death based upon a theory of strict liability. However, rather than characterize the theory of strict liability in terms of implied warranty the *Soileau* court incorporated into admiralty a theory of strict liability in tort. The court reasoned that in the short period of time that had elapsed since *Noel* was decided the cause of action founded upon strict liability in tort had been recognized and incorporated into the Restatement. The court considered the principles enunciated in the Restatement of Torts, Second, §§ 400 and 402A [imposing strict liability in tort upon manufacturers of products in such a condition as to be unreasonably dangerous] as a uniform statement of the rule now so generally accepted in the States as to permit it to be incorporated into federal admiralty law." *Id.* at 127.

The most recently decided case in this area, Schaeffer v. Michigan-Ohio Nav. Co., 416 F.2d 217 (6th Cir. 1969), affirmed the trial court's submitting to the jury in an admiralty case the issue of whether the defendant had breached an implied warranty of fitness. But the court gave no indication as to whether it considered the warranty to be in the nature of contract, tort or both.

■■ This court favors admiralty's incorporation of a strict products liability action. The court further feels that the action should be recognized as sounding in tort. Reasons previously have been stated why the tort characterization, free of the many fictions that are associated with the implied warranty action, is conceptually superior. The tort rationale, by imposing liability directly upon the simple grounds of policy, restores simplicity to the action and focuses attention on substance rather than form. Additionally, such action founded in tort will provide a more liberal choice of defendants for plaintiffs in personal injury and death actions. Habitual defendants in such actions would also benefit from impleading others who may be at least partially responsible for the injury or death.

Thus, the court has determined: (1) that the common-law strict products liability action has become sufficiently well-established to justify its incorporation into the law of admiralty; (2) that the action sufficiently sounds in tort to make tort principles applicable for jurisdictional purposes; (3) that the action should be made available in admiralty; and (4) any action stated herein that is subject to the admiralty tort jurisdictional test comes within the court's admiralty jurisdiction. However, whether the allegations of the pleadings in the instant case have asserted such a cause of action against Coppus is uncertain. Thus, repleading will be necessary to resolve this ambiguity.

In response to the motion to consolidate actions 68–C–138 and 69–C–181, Coppus Engineering Co. has brought to the court's attention that the plaintiff in 69–C–181 did not designate in her first amended petition that the cause is one brought in admiralty under Rule 9(h). Of course, if 69–C–181 is not brought in admiralty, it cannot be consolidated with 68–C–138, an action that has been brought in admiralty. The original complaint was designated as falling under 9(h), but of course the amended pleading supersedes the former. The plaintiff has consistently urged that the case is in admiralty. Perhaps the failure to so designate the amended complaint was an oversight. The plaintiff will be required to amend to clarify this ambiguity.

The court has been advised that there is no question that jurisdiction over the actions against Coppus exist on the civil side of the court's docket in that there is diversity of citizenship and more than $10,000 in controversy, exclusive of interest and costs. If the suits against Coppus were filed on the civil side of this court's jurisdiction, any question concerning jurisdiction and the availability of actions founded upon contract and strict products liability would be obviated. Although the court's holding is that such actions may be stated in admiralty, a higher court may very well not agree. Rather than jeopardize their actions and risk the waste of judicial time and effort, it appears to the court that perhaps it would be best for the plaintiff in 69–C–181 and third party plaintiff in 68–C–138 to file their actions against Coppus on the civil side of the docket. By virtue of the provisions of Rule 42(a), a joint trial could be had of all matters in controversy, with a jury being impaneled to hear the issues in the actions against Coppus, and the court deciding the issues in those causes properly consolidated under 68–C–138.

By reason of the foregoing, it is hereby ordered, adjudged and decreed that: (1) if the plaintiff in 69–C–181 wishes to proceed under Rule 9(h), plaintiff shall amend pleadings to so indicate; (2) third party plaintiff Rincon Ship Yard, Inc. in 68–C–138 shall amend its third party complaint to clarify whether it asserts a products liability cause of action against Coppus that is founded upon negligence; (3) plaintiff in 69–C–181 and third party plaintiff Rincon Ship Yard, Inc. in 68–C–138 shall amend their pleadings to indicate whether they assert a strict products liability action against Coppus; (4) plaintiff in 69–C–181 and third party plaintiff Rincon Ship Yard, Inc. in 68–C–138 are granted leave to withdraw their actions against Coppus, if they so desire, and to refile such actions against Coppus on the civil docket of this court; (5) all such amendments shall be made within fifteen (15) days from the date of the entry of this order; (6) should plaintiff in 69–C–181 choose not to amend so as to state that the case falls under Rule 9(h) the motion to consolidate will be denied; (7) should plaintiff in 69–C–181 amend so as to state that the case falls under Rule 9(h) the motion to consolidate 69–C–181 with 68–C–138 will be granted; (8) should the third party plaintiff Rincon Ship Yard, Inc. fail to clarify by means of amendment whether it asserts an action in negligence against Coppus, or a strict products liability action against Coppus, Coppus will be dismissed from such third party complaint; (9) should either

plaintiff in 69–C–181 or third party plaintiff *Rincon Ship Yard, Inc.* in 68–C–138 dismiss and refile on the civil docket of this court the actions they presently assert against Coppus herein, there will be a joint trial of all matters in controversy, with a jury, if timely demanded, deciding the civil fact-issues against Coppus and with the court deciding the admiralty fact-issues.